Leo J. JONES and Linda
Jones, Appellants,

v.

Robert P. BLAIR; Mary J. Blair; and
JKM Corporation, f/k/a Moorhead Ma-
chinery & Boiler Company, Appellees.

No. 85–601.

Supreme Court of Iowa.

May 21, 1986.

C.A. Frerichs of Fulton, Frerichs, Martin & Andres, P.C., Waterloo, for appellants.

David L. Riley of Lindeman & Yagla, Waterloo, for appellees Blair.

Bruce L. Braley and Samuel T. Beatty of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee JKM.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

McGIVERIN, Justice.

Plaintiffs Leo and Linda Jones appeal from a judgment entered on a jury verdict in favor of defendants Robert and Mary Blair and JKM Corporation, formerly known as Moorhead Machinery & Boiler Company (Moorhead), in a negligence action arising from a traffic accident. Defendants Blair have cross-appealed. Upon a consideration of the controlling issues presented for our review, we reverse on the appeal and remand for a new trial.

Plaintiff Leo Jones brought this action to recover damages for personal injuries he suffered in a collision with a vehicle owned by defendants Robert and Mary Blair, and operated by Robert allegedly while in the course of his employment for defendant Moorhead. Leo's wife, Linda Jones, was a passenger in the car and joined in this action seeking damages for loss of consortium. Defendants Robert and Mary Blair filed a counterclaim, Iowa Rule of Civil Procedure 29, seeking damages for the repair and loss of use of their vehicle as a result of the collision.

At the time of the accident, on December 31, 1981, plaintiffs were westbound on highway 18, a two-lane road in Fayette County. They were proceeding at a speed of approximately forty to forty-five miles per hour. It was snowing that day, and the highway was snow-covered and slippery.

Defendant Robert Blair also was traveling west on highway 18. He was returning to his home in Ankeny after completing work on a job for defendant Moorhead in

Lansing, Iowa. Moorhead, a Minnesota corporation, had contracted with a company located in Lansing to furnish certain services repairing boiler generating tubes. Defendant Blair was hired through a union hiring hall to work under a collective bargaining agreement which provided reimbursement for mileage expenses incurred by employees, who were required to travel more than thirty miles from their home to a job site, in addition to hourly pay by Moorhead.

Blair began work for Moorhead at Lansing in early December 1981, and the particular job for which he was hired was completed on December 30, 1981. On that same day, he was laid off and received his final pay and allowances from defendant Moorhead, including transportation pay to his home. Because of the slippery road conditions, Blair decided to leave for home the following day, December 31.

At trial, defendant Blair testified that prior to the collision with the Jones vehicle, he was following two cars on the highway at a speed of approximately thirty-five to forty miles per hour. The Jones car was directly in front of him. Blair testified that when the cars reached an intersection with a county road, the two cars preceding him pulled over towards the right side of the road as though both were going to make a right turn north off the highway. Blair continued to proceed westerly in the right-hand lane. The lead car, the one in front of the Jones vehicle, turned right onto the county road, and then the Jones vehicle made a left turn in front of Blair. Defendant Blair pumped his brakes, but he was unable to stop and slid into plaintiffs' vehicle. Blair testified that he did not see a turn signal from the Jones' car until just prior to the impact. Leo Jones testified that he put his left turn signal on approximately one thousand feet from the intersection and that he did not swerve right before turning left.

Plaintiffs brought this action alleging various specifications of negligence against Robert Blair including: 1) passing in a prohibited zone, Iowa Code section 321.304 (1981); 2) failure to have his motor vehicle under control and to reduce his speed at an intersection, Iowa Code section 321.288(3); 3) driving at a greater speed than would permit stopping within an assured clear distance, Iowa Code section 321.285; 4) following too closely, Iowa Code section 321.-307; 5) failing to operate at a reasonable and proper speed, Iowa Code section 321.-285; 6) failing to maintain a proper lookout; and 7) failure to have his motor vehicle under control.

Plaintiffs contended that at the time of the accident defendant Blair was acting within the scope of his employment, and, thus, Moorhead was brought into the action under the doctrine of respondeat superior.

After plaintiffs completed their evidence, defendant Moorhead moved to dismiss or for a directed verdict. Iowa R.Civ.P. 216. The motion was renewed at the close of all the evidence. The district court denied both motions.

In his answer defendant Blair pleaded legal excuse, claiming that if he violated a statute or common law duty that he had a legal excuse for doing so and was, therefore, not negligent. Plaintiffs objected to any jury instruction on legal excuse, particularly the one proposed by the court. However, such an instruction was given, and the jury returned special verdicts, Iowa Rule of Civil Procedure 205, finding that neither of the drivers, Robert Blair nor Leo Jones, was negligent. The court entered judgment in favor of defendants Blair and Moorhead.

Plaintiffs then filed a motion for new trial, Iowa Rule of Civil Procedure 244, raising various grounds. The main contentions by plaintiffs involved the issue of legal excuse. After hearing on the matter, the district court denied plaintiffs' motion for new trial.

Plaintiffs appealed raising numerous errors, and defendants Blair cross-appealed.

The controlling issues raised by the parties are: 1) whether there was substantial evidence to support submission to the jury of Robert Blair's affirmative defense of

legal excuse; 2) whether, if the jury instruction on legal excuse was warranted, the instruction given by the district court was defective; 3) whether there was improper opinion testimony permitted about the effects of snow and ice in causing the accident; and 4) whether Moorhead was entitled to a directed verdict on the ground that Robert Blair was not an employee acting within the scope of his employment for Moorhead at the time of the accident.

I. *Substantial evidence of legal excuse.* A violation of statutory rules of the road constitutes negligence per se under our holding in *Kisling v. Thierman*, 214 Iowa 911, 915, 243 N.W. 552, 554 (1932), absent a legal excuse. Legal excuse is a doctrine which allows a person to avoid the consequences of a particular act or type of conduct which would otherwise be considered negligent by showing a justification for it. *Freese v. Lemmon*, 267 N.W.2d 680, 684–85 (Iowa 1978). In *Kisling*, this court listed four categories of legal excuse, one of which is when a person "is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute." 214 Iowa at 916, 243 N.W. at 554.

Basically, the doctrine of sudden emergency reflects the realization that a person who is confronted with an emergency situation is "left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based largely upon impulse or guess." W. Prosser, *The Law of Torts* § 33 at 169 (4th ed. 1971). Thus, the person is not held to the same standard of care as one who has had time to reflect before acting.

Ordinarily, whether one has established a legal excuse is a question for the jury. *Bangs v. Keifer*, 174 N.W.2d 372, 376 (Iowa 1970). Upon review, in determining whether the issue of legal excuse was properly submitted, we construe the evidence in a light most favorable to the one asserting the defense. *Bannon v. Pfiffner*, 333 N.W.2d 464, 469 (Iowa 1983). We also note that the person who is attempting to assert the defense has the burden of proving that he or she was legally excused by virtue of the emergency. *Id.* Therefore, we will consider the evidence in the light most favorable to defendant Blair in order to determine if he has met his burden on this issue. Keeping these other general principles in mind, we consider the various contentions raised by the parties.

Plaintiffs contend that there was not substantial evidence in this record to support the submission of defendant Blair's affirmative defense of the legal excuse of sudden emergency to the jury.

Plaintiffs rely heavily on our holding in *Bannon v. Pfiffner*, where this court rejected a defense of sudden emergency based on the *foreseeability* of icy conditions on a roadway. There we stated that when "the icy condition is general ... the driver must be taken as being aware of it. If such a driver proceeds in normal fashion notwithstanding the ice and eventually slides on a patch of it, he cannot set up the icy condition as an 'emergency'." 333 N.W.2d at 469–70. Plaintiffs argue that defendant Blair was guilty of negligence as a matter of law in not being able to stop his vehicle on the icy highway because he knew of the slippery road conditions before he started out. Therefore, they contend that Blair is foreclosed from relying on the legal excuse of sudden emergency.

Defendant Blair, on the other hand, alleges that when he was faced with the unexpected maneuver of plaintiffs' car in turning to the right and then making a left turn off the highway, coupled with the icy conditions, it was impossible for him to comply with the law, and, thus, his conduct should be excused under the sudden emergency doctrine. Further, Blair states that it was for the jury to resolve the conflicting testimony by the parties regarding Jones' left turn and to determine if he in fact was faced with an emergency.

We agree with defendant. In viewing the evidence in the light most favorable to defendant, we conclude there was substantial evidence from which the jury could

have found Blair's violation of certain rules of the road was excused by Leo Jones' creation of an emergency not of defendant's own making.

The holding in *Bannon* does not compel a contrary conclusion, as plaintiffs suggest. In *Bannon*, defendant solely relied on the icy road conditions to support the defense of sudden emergency. We did not consider in that case the type of question raised here as to whether the unexpected left turn by Jones created an emergency.

In *Cunningham v. Court*, 248 Iowa 654, 82 N.W.2d 292 (1957), however, we did consider such an issue. There we held ample evidence existed to justify submission of the legal excuse of sudden emergency to the jury when plaintiff allegedly made a left turn in front of defendant's vehicle, without indicating his intention to do so. Plaintiff testified that he had used a turn signal. This court stated, "Such conflict being as to a matter of fact, it was for the jury to determine, and we believe these specifications of negligence were sufficiently supported for the jury's consideration." *Id.* at 660, 82 N.W.2d at 296.

Therefore, we conclude the district court did not commit reversible error in submitting defendant's issue of the legal excuse of sudden emergency to the jury.

Plaintiffs also claim that there was not substantial evidence to support the submission of the other two specifications of legal excuse other than sudden emergency to the jury. We consider this contention in division II below.

II. *Jury instruction 29.* In its instruction number 29, the court told the jury:

Defendant Robert Blair claims that if it is found that he violated a law in the operation of his motor vehicle, that he had a legal excuse for doing so and was, therefore, not negligent. You are instructed that the burden of proof is upon said defendant to establish a legal excuse by a preponderance of the evidence.

By the term "legal excuse" is meant:

1. Anything that would make it impossible to comply with the law.

2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the law.

3. When the driver is confronted by an emergency not of his own making, and by reason thereof he fails to obey the law.

If you find that Defendant Robert Blair has violated a law, as submitted to you in other instructions, and that he has established a legal excuse for doing so under any one of the three definitions given you in this instruction, then you should find Defendant Robert Blair not negligent for violating the particular law involved.

This was based on Iowa Uniform Jury Instruction 5.7.

Plaintiffs contend instruction 29 was defective because it was too general and there was not sufficient evidence to support its submission to the jury. We conclude that plaintiffs minimally preserved error as to this assignment. In essence, their objection is that the instruction should have been tailored to the facts of the case. They rely on this court's holding in *Gibbs v. Wilmeth*, 261 Iowa 1015, 1022, 157 N.W.2d 93, 97 (1968), where we stated that a nearly identical instruction on legal excuse was fatally defective because it was "incomplete and could be nothing except confusing to the jury." We conclude, as we did in *Gibbs*, that this type of a general instruction on legal excuse is erroneous because it did not fully and fairly instruct the jury on the issue of legal excuse. Basically, we note three defects in instruction 29.

First, it set forth three possible bases of legal excuse. However, defendants relied upon and argued only one category of legal excuse, the doctrine of sudden emergency. The other two specifications "anything that would make it impossible to comply with the law" and "anything over which the driver has no control which places his car in a position contrary to the provisions of the law" were contained in instruction 29 along with the specification on sudden emergency. It was incorrect for

these other two categories of legal excuse to be included in the instruction under this record. The jury should have only been instructed on the bases of legal excuse which were supported by the evidence.

Second, it is unclear whether the defense of sudden emergency should be applicable to all of the specifications of negligence alleged by plaintiffs against defendant Blair and submitted by the court to the jury. The instruction does not refer to any of the seven specifications submitted.

■ Third, and finally, the instruction did not specify what factual circumstances supported the claimed sudden emergency defense, whether defendant was relying on the icy road conditions, the alleged sudden left turn by plaintiffs, or both. As we stated in *Gibbs:*

> Beyond the abstract definition in [the legal excuse] instruction ... the jury remained entirely ignorant of what elements would justify them in finding defendant had established legal excuse. Important to their decision were, among other things, the condition of the highway, the presence or absence of snow and ice ... [unexpected manuever by defendant's car].... It might almost be said that these circumstances were determinative in this case; yet none of them was called to the attention of the jury, either in this instruction or elsewhere.

*Id.* at 1022, 157 N.W.2d at 97.

A jury instruction must "state the applicable law so that a jury composed of non-lawyers can understand it." *State v. Morrison*, 368 N.W.2d 173, 176 (Iowa 1985). We are not convinced that instruction 29 met this basic requirement. Under the circumstances existing under this record, we conclude the instruction did not adequately advise the jury as to the considerations involving legal excuse and sudden emergency, and, thus, plaintiffs are entitled to a new trial.

■ III. *Expert testimony.* Another contention raised by plaintiffs which we address because it may arise on retrial is whether the district court erred by allowing testimony by a deputy sheriff of Fayette County who investigated the accident that in his opinion the accident "would not have happened on dry pavement." Plaintiffs argue that Deputy Steve Hoover's testimony was outside the scope of the direct examination and, thus, was improperly admitted. We disagree.

First, the deputy's accident report was admitted into evidence during direct examination. That report contained basic information on the drivers as well as a diagram and description of how the accident occurred. The weather and road conditions were a part of this written report. Thus, the questions regarding the part that the snow played in causing the accident covered information incorporated into the report that plaintiffs introduced into evidence at trial.

Further, on direct examination, Deputy Hoover testified he put into his report how the accident happened. He also was asked whether he remembered the weather on the day of the accident and to describe it and what road conditions were like at that time. We conclude, therefore, that plaintiffs opened the door for defendants' cross-examination question regarding the snow. As this court stated in *Avery v. Harms Implement Co.*, 270 N.W.2d 646, 650 (Iowa 1978):

> [Cross-examination] may extend to any subject within the fair purview of direct examination (citations omitted). We have said cross-examination may be used to rebut not only the direct testimony but the presumptions or inferences which such testimony reasonably raises.

■ Plaintiffs also argue that Deputy Hoover's testimony should have been limited because defendants failed to identify Hoover as an expert witness in their answers to interrogatories. We note that defendants did not identify Hoover as an expert witness because they had no expectation of calling him as an expert witness. He was plaintiffs' own witness; thus, there was no duty to disclose his name to plaintiffs on the part of defendants. *See* Iowa R.Civ.P. 122(d). The purpose of requiring

disclosure of expert witnesses is to prevent unfair surprise to the other party. *See Lambert v. Sisters of Mercy Health Corp.*, 369 N.W.2d 417, 421–22 (Iowa 1985). Here, plaintiffs cannot claim surprise from their own witness.

For these reasons, we believe that Deputy Hoover's testimony was properly admitted at trial.

IV. *Respondeat superior.* The final issue we consider only applies to plaintiffs and defendant Moorhead. Moorhead moved to dismiss or for a directed verdict, Iowa Rule of Civil Procedure 216, at the close of plaintiffs' evidence and all of the evidence. Plaintiffs sought to hold Moorhead responsible for any negligence by Blair under the doctrine of respondeat superior. Moorhead argued that the evidence established conclusively that at the time of the accident 1) defendant Blair was not an employee of Moorhead, and 2) defendant Blair was not acting within the scope of any employment for Moorhead.

 The district court denied both motions. The crucial issue to be considered here is whether Blair's negligence can be imputed to his alleged employer, Moorhead. It is our conclusion that Blair was not acting in the scope of his employment while driving from Lansing, his former work site, to his home and that, therefore, Moorhead's motion for directed verdict should have been sustained by the district court.

 Under the doctrine of respondeat superior, an employer will be liable for the negligence of an employee committed while the employee is acting in the scope of his employment. *Burr v. Apex Concrete Co.*, 242 N.W.2d 272, 276 (Iowa 1976). An employee acts within the scope of his employment when the employer has the right to direct the means and manner of doing work, and has the right of control over the employee. *Volkswagen Iowa City, Inc. v. Scott's Inc.*, 165 N.W.2d 789, 793 (Iowa 1969).

As a general rule, an employee is not acting in the scope of his employment while driving to and from work. *Halstead v.*

*Johnson's Texaco*, 264 N.W.2d 757, 759 (Iowa 1978). Although such activity is work-motivated, the element of control is lacking. Several exceptions to this so-called "going and coming" rule have been recognized. *Id.* at 760. However, these exceptions exist in the context of workers' compensation cases. *See* Iowa Code ch. 85.

Plaintiffs maintain that an employee should be considered to be within the scope of employment while traveling to and from work, where as here, the employee is compensated for travel time and costs. Plaintiffs note that Blair received payments for travel allowances in order to return to his home in Ankeny after termination of the work at the Moorhead job site in Lansing. They further point out that the accident occurred on a direct route from the job site to Blair's home. There was evidence at trial that because of the nature of the specialty work required at the site in Lansing, it was necessary to hire skilled workers such as Blair to assist in completing the job. This contention is based on a well-established exception to the "going and coming" rule in workers' compensation cases. *See Case of Barker*, 105 Idaho 108, 666 P.2d 635, 637 (1983) and citations therein; *see generally* 1 A. Larson, *The Law of Workmen's Compensation* § 16.20–.30 (1982).

 We agree with other courts, however, that the present type of case is not a proper one for application of workers' compensation principles to a tort action. The rules adopted for workers' compensation cases should not be automatically and mechanistically applied in negligence cases involving the doctrine of respondeat superior. As was stated by the Arizona Court of Appeals when considering this issue:

While workmen's compensation law and respondeat superior doctrine both involve allocations of costs regarding industrial accidents, they differ in scope. Workmen's compensation benefits turn solely upon whether the employee was injured while performing an activity related to his job—and "relatedness" is usually a function of benefit to the em-

ployer. In contrast, respondeat superior subjects employers to liability for injuries suffered by an indefinite number of third persons. To limit this burden of liability, the narrower concept, "scope of employment," has long been tied to the employer's right to control the employee's activity at the time of his tortious conduct.... We therefore reject the [appellant's] argument that workmen's compensation law be applied in this tort case. *Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761, 764 (Alaska 1973).

*Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 640 P.2d 211, 213 (Ct.App.1982). *Accord State v. Rousseau*, 111 Ariz. 130, 524 P.2d 951 (1982); *Lundberg v. State*, 25 N.Y.2d 467, 472, 306 N.Y.S.2d 947, 951, 255 N.E.2d 177, 179 (1969).

While Moorhead granted travel reimbursement to its employees, it had no right to control Blair before the time he was required to report for work, such as during his travel from Ankeny to Lansing or travel back to his home again. Moorhead had no right to dictate Blair's manner of travel, his speed, that he use his car to go and come from Ankeny to Lansing, or that he ever return to Ankeny at all. Moorhead had no claim to Blair's time until he actually reported to the job site in the morning, and it had no claim to his time once the job was completed.

Blair would have been free to travel to Lansing a week in advance of the time the job began, if he so chose. He was free to arrange alternative transportation. If Blair had desired to do so, he could have remained in Lansing indefinitely after the job was completed on December 30.

On this basis, we conclude that the bare fact of the travel reimbursement, without more, did not establish a jury question as to whether Blair was under the control of Moorhead while he was returning to his home after the Lansing job was completed. The district court should have granted defendant Moorhead's motion for directed verdict on this basis.

V. *Disposition.* We have discussed the main issues raised in the appeal which were considered by or submitted to the jury. One of those issues, which concerns instruction 29, requires reversal and a new trial on all submissible issues involving plaintiffs Jones and defendants Blair and the petition and counterclaim. We also have concluded defendant Moorhead's motion for directed verdict should have been sustained.

Plaintiff's motion to strike a portion of defendant Moorhead's brief was ordered submitted with the appeal. The motion is overruled.

Defendants Blair cross-appealed but raised no issues in their brief. Therefore, the cross-appeal is affirmed.

The parties also ask us to consider several other issues that arose during the trial and which may arise on retrial. We decline the invitation. Some of the assignments are without merit. Other issues must be considered by the district court on retrial based on the record then existing and authorities presented by the parties. It would be premature for us to pass on such issues now.

REVERSED AND REMANDED ON THE APPEAL; CROSS-APPEAL AFFIRMED.

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

I concur in all aspects of the opinion of the court as it applies to the facts of the present case. In view of some of the arguments which have been made, however, I wish to express my view that "sudden emergency" is not the only *Kisling* category which may be applicable in an accident on an icy roadway.

Because of rapidly changing road conditions, a driver may come upon an icy stretch of highway under circumstances where it is not safe to pull off or stop. A driver proceeding ahead under such circumstances may gain an awareness of the road conditions sufficient to preclude application

of the "sudden emergency" category of legal excuse. This does not mean, however, that the road conditions may not provide a legal excuse for certain statutory violations under a different *Kisling* category, *i.e.*, that the road conditions "make it impossible to comply with the statute or ordinance."