**William John WEISS, Jr., and Dee Ann Weiss, Individually and As Conservators of the Estate of Jeffrey Weiss, Appellants,**

**v.**

**Neelinder Singh BAL and Harpal S. Bal, Appellees.**

**No. 91–1632.**

Supreme Court of Iowa.

June 16, 1993.

Lad Grove of Grove Law Office, Ames, and Jerry Weislander of Frank G. Wieslander, P.C., Altoona, for appellants.

John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for appellees.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal from a defense verdict in an action for injuries sustained in a collision between a car and a pedestrian in a high school parking lot. The unsuccessful plaintiffs contend the court erred when it submitted the doctrine of sudden emergency for the jury's consideration. The defendants cross-appeal from the court's refusal to award certain costs in connection with an expert's deposition. We reverse on the appeal, affirm on the cross-appeal, and remand for new trial.

I. *Background facts and proceedings.* Thirteen-year-old Jeffrey Weiss was injured when he was struck by a vehicle owned by defendant Harpal Bal and driven by Bal's seventeen-year-old son, defendant Neelinder (Neel) Bal. The collision occurred as Jeffrey and two friends crossed the Ames High School parking lot after an evening basketball game. Neel struck Jeff as he swerved to avoid hitting Jeff's companions who, Neel claimed, darted into the path of his car.

Jeff's parents, individually and as conservators of his estate, sued Neel and his father on a number of negligence theories. At trial, the court instructed on the following common-law theories: failure to maintain a proper lookout, failure to maintain control of vehicle, and failure to operate at a reasonable and proper speed. The court also submitted instructions on the defense's allegation that Jeff was negligent in the following particulars: walking into the pathway for motor vehicles without ascertaining the safety of doing so, failure to maintain a proper lookout, and failure to exercise ordinary care "to avoid being struck by a motor vehicle." The jury returned a verdict for the defendants. This appeal followed.

II. *Sudden emergency.* Although plaintiffs cite other error, we address only the dispositive question of whether, under the facts sketched above, the court erred by giving the jury the following instruction on "sudden emergency":

Neelinder Bal claims a legal excuse because Jeffrey Weiss suddenly stepped out or ran out in front of him. A person who relies upon Sudden Emergency to justify his conduct must prove all of the following propositions:

1. He was faced with a sudden emergency.

2. The emergency was not created by his own negligence.

3. He conducted himself as a reasonably careful person would have in a similar emergency.

A Sudden Emergency is a combination of circumstances that calls for immediate action or a sudden or unexpected occasion for action which could not have been anticipated by an ordinarily careful per-

son under the same or similar circumstances.

Someone who is faced with a sudden emergency not brought about by his fault, and is required by such emergency to act without sufficient time to determine the best action to take, is not held to the same accuracy of judgment as would be required if there was time to deliberate. Under such circumstances, a person is only required to act as an ordinarily careful person would act when suddenly placed in a similar position. In deciding this issue, you must take into account the fact that the person is in a position where a speedy decision must be made, and that the shortness of time prevents an accurate assessment of what will happen. If a person's choice turns out to be unfortunate, this does not make it improper even if a different choice would have been made had there been sufficient time to consider all the likely results.

This instruction, taken nearly verbatim from Iowa Uniform Jury Instruction 600.-75, is the companion to Uniform Instruction 600.74, "Legal Excuse." The doctrine of legal excuse permits the jury to excuse a defendant's failure to obey statutory law when confronted with an emergency not of his or her own making. *Jones v. Blair*, 387 N.W.2d 349, 352 (Iowa 1986); *Kisling v. Thierman*, 214 Iowa 911, 915, 243 N.W. 552, 554 (1932). Sudden emergency may be an element of legal excuse with respect to statutory violations, but it also has independent significance in common-law claims.

Plaintiffs offer three reasons to support their claim that no sudden emergency instruction should have been given. First they urge us to find that the doctrine has been "consumed and subsumed" in the concept of comparative fault. Second they contend the instruction amounts to an unnecessary comment on the evidence that unduly emphasizes a defense theory already adequately covered in the instructions on ordinary care. Finally, they claim the facts do not support submission of the doctrine in this case.

We note at the outset that the doctrine of sudden emergency has come under increasing attack in recent years, principally because of its tendency to create confusion over the proper standard of care to be applied by jurors in emergency situations, and the doctrine's impact on comparative negligence principles. *See generally* Jeffrey F. Ghent, Annotation, *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R.5th 680, 687 (1993). A number of jurisdictions have abolished the doctrine altogether. *See McClymont v. Morgan*, 238 Neb. 390, 394, 470 N.W.2d 768, 771–72 (1991) (independent sudden emergency instruction not warranted in negligence action because it singles out one aspect of general standard of care, thereby unduly emphasizing one party's argument); *Simonson v. White*, 220 Mont. 14, 25, 713 P.2d 983, 989 (1986) (sudden emergency instruction "adds nothing to the established law applicable in any negligence case" and may leave impression that an emergency excuses lack of due care); *Knapp v. Stanford*, 392 So.2d 196, 198 (Miss.1980) ("hazard of relying on the doctrine of 'sudden emergency' is the tendency to elevate its principles above what is required to be proven in a negligence action").

Other courts have expressed the view that a sudden emergency instruction should rarely, if ever, be given in an ordinary negligence case. *See Paiva v. Pfeiffer*, 229 N.J.Super. 276, 283–84, 551 A.2d 201, 205 (1988) (ordinary rules of negligence afforded sufficient gauge to appraise driver's conduct; giving additional sudden emergency instruction unduly emphasized one phase of proofs and was argumentative in effect); *Templeton v. Smith*, 88 Or.App. 266, 268, 744 P.2d 1325, 1326 (1987) (judgment for defendant motorist reversed; court expressed doubt that sudden emergency instruction should ever be given in ordinary auto accident case); *see also* William L. Prosser and W. Page Keeton, *Prosser and Keeton on Torts* § 33, at 197 (5th ed. 1984) (hereafter *Prosser*) (noting that model jury instructions in Illinois, Florida, Kansas and Missouri recommend *against* such an instruction). *But see Young v. Clark*, 814 P.2d 364, 369 (Colo.1991) (ap-

proving sudden emergency instruction as an aid to jury understanding of fault principles in an emergency context).

Our own recent cases have acknowledged the doctrine. In *Jones v. Blair*, 387 N.W.2d 349, 353 (Iowa 1986), we reversed a judgment for defendant motorist due to imprecision in the sudden emergency instruction given, but noted that unusually hazardous road conditions could excuse a driver's failure to obey traffic laws that would otherwise constitute negligence per se. Similarly in *Bannon v. Pfiffner*, 333 N.W.2d 464, 470 (Iowa 1983), we approved the use of a sudden emergency instruction which would excuse a driver from negligence for driving on the wrong side of the highway when suddenly confronted with unexpectedly icy road conditions. Unexpected and nonnegligent brake failure has likewise furnished a legal excuse for a defendant driver's inability to follow the prescribed statutory obligation to stop at an intersection. *Bangs v. Keifer*, 174 N.W.2d 372, 373 (Iowa 1970).

The question is whether the instruction retains its validity when only common-law negligence is alleged and the court has already instructed the jury to compare the fault of both parties. Unlike the doctrine of legal excuse—which exonerates a party from liability for negligence per se—the sudden emergency doctrine is merely an expression of the reasonably prudent person standard of care. *Meyer v. Johnson*, 254 N.W.2d 107, 110–11 (S.D. 1977); *Prosser* § 33, at 196–97. It expresses the notion that the law requires no more from an actor than is reasonable to expect in the event of an emergency. *Young*, 814 P.2d at 368; Restatement (Second) of Torts § 296, at 64–65 (1965).

We share the concern of courts that have criticized the sudden emergency instruction for its tendency to unduly emphasize one aspect of the case. Our own instruction is particularly susceptible to that criticism.

We believe, however, that a jury may be aided by a succinct and narrowly drafted instruction that tells it the actor is held only to the standard of reasonable care under the circumstances posed by the emergency. *See Young*, 814 P.2d at 368.[1] Thus we reject plaintiffs' argument that such an instruction has no place in a comparative fault scheme.

Turning to plaintiffs' alternative arguments, however, we are convinced that this case exemplifies the unfairness of giving such an instruction—and thereby permitting the jury to excuse an actor's conduct—when the situation confronting the actor is not uncommon but foreseeable.

> Sudden emergency has been defined as: (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action, exigency, pressing necessity.

*Bangs*, 174 N.W.2d at 374. We are mindful that it is ordinarily up to the jury to decide whether, in fact, a party was faced with a sudden emergency. *Id.* We must also view the evidence in the light most favorable to the party asserting the defense. *Id.* at 376. But we are unable to find substantial support in this record for defendants' claim that Neel was suddenly confronted with some unforeseen, perplexing, or exigent circumstance *not of his own making* that should excuse his tortious conduct.

Neel's own testimony reveals that following the basketball game, he and his passengers waited at least ten minutes before leaving their parking spot. By that time the traffic had substantially thinned out. Although it was dark, Neel had an unobstructed view from where he backed up to where, some distance later, the collision occurred. The pavement was dry. Neel admitted that when one of his passengers yelled "look out" and he suddenly saw the

---

1. We believe the Colorado pattern instruction on sudden emergency, quoted in *Young*, fits this description:

   A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances.
   814 P.2d at 365.

boys some eight to thirty feet in front of him, he did not apply the brakes but swerved instead to avoid them. It was then that he ran over Jeff.

This is not a case in which a driver was suddenly confronted with oncoming traffic on the wrong side of the road, an unexpected patch of ice, a nonnegligent failure of brakes, or a sudden heart attack. The facts reveal no more than the everyday hazard of driving through a school parking lot and the not uncommon appearance of pedestrians crossing the traveled way to reach their parked cars. We are convinced the collision resulted from one or more of the fault concepts alleged—lack of control, excessive speed, failure on the part of the driver or pedestrian to watch out for the other—not from an emergency independent of this conduct. In other words, the conduct created the emergency; the emergency did not create conduct to be excused. *See, e.g., Freese v. Lemmon*, 267 N.W.2d 680, 684–85 (Iowa 1978) (burden rests on party claiming legal excuse to show conduct did not contribute to emergency).

Were we to extend the sudden emergency doctrine to cases like the one before us, it could be relied upon in nearly any traffic context to excuse "emergencies" that a reasonably prudent driver must be prepared to meet. *Prosser* § 33, at 197. We do not believe that excusing the failure to anticipate such ordinary hazards is in keeping with the spirit or purpose of the doctrine. Thus we conclude the instruction should not have been given over plaintiffs' objection. Plaintiffs were clearly prejudiced by its submission. They are entitled to a new trial.

■ II. *Costs.* Before trial, defendants made their expert witness available to plaintiffs for deposition on the condition that plaintiffs would pay the expert's usual and customary charges for responding to discovery in accordance with Iowa Rule of Civil Procedure 125(f). Although the deposition took place, plaintiffs apparently reneged on their agreement to pay the expert's fee and mileage expense. Thus in a posttrial motion to tax costs, defendants asked the court to assess plaintiffs

$1288.82 for unpaid discovery expense. The court declined, ruling that defendants were entitled to recover no more than $150 per day plus mileage permitted for expert testimony under Iowa Code section 622.72 (1991). Defendants appeal, claiming discovery expense allowable under rule 125(f) cannot be restricted by the witness compensation limits of section 622.72.

The controversy is controlled by our recent decision in *Coker v. Abell–Howe Co.*, 491 N.W.2d 143 (Iowa 1992). There we held that taxation of costs for expert discovery depositions in excess of the amount permitted by section 622.72 was error. *Id.* at 151. We need not decide whether defendants would have been entitled to a protective order under rule 125(f), excusing them from making their expert available for deposition until plaintiffs advanced the expenses. Recoverable court costs would not include reimbursement for the breach of a private agreement reached by the parties prior to trial. The district court was correct in so ruling.

**REVERSED ON APPEAL, AFFIRMED ON CROSS–APPEAL, AND REMANDED FOR NEW TRIAL.**