# IN THE COURT OF APPEALS OF IOWA

No. 13-0752
Filed May 29, 2014

ROBERT L. SMITH, D.D.S., CRISTY
SMITH, TRISHA SMITH and KYLE
SMITH,
    Plaintiffs-Appellants,

vs.

CRAIG ALAN WRIGHT and ANGUS
INDUSTRIES, INC.,
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

In this comparative negligence case, the plaintiffs appeal the district court's denial of their motion for new trial. **REVERSED AND REMANDED.**

David J. Dutton and Erin Patrick Lyons of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellants.

J. Scott Bardole of Law Offices of Daniel Hanson, West Des Moines, and Timothy C. Boller of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellees.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

A two-vehicle collision involving a deer led to this comparative negligence case. Plaintiff-driver Robert L. Smith appeals a jury verdict in favor of defendant-driver Craig Wright. Smith contends the district court should have granted his motion for new trial based on its admission of improper testimony by Wright's accident reconstruction expert and its improper submission to the jury of Wright's affirmative defense of sudden emergency. Because we conclude the court's improper admission of expert opinions on legal conclusions prejudiced Smith, we reverse and remand for a new trial. We also determine the evidence supported instruction on the doctrine of sudden emergency.

## I. Background Facts and Proceedings

Around 5:00 p.m. on October 26, 2009, the weather was sunny and clear with no wind. Smith was driving his 2005 Subaru eastbound in the right lane of U.S. Highway 18, a four-lane divided highway. Wright was driving a 2008 Ford Escape behind Smith. Trailing them both in the right lane was Dennis Sanvig, who was driving at a speed of sixty-seven miles per hour and slowly gaining on Wright and Smith.

Wright pulled into the left lane to pass Smith. This area of the highway is mostly flat and without visual obstructions. After looking back to check his clearance to return to the right lane, Wright struck a deer in the left lane. Wright's car moved into the right lane, heading toward the right shoulder and ditch. Neither Smith nor Sanvig saw the deer. The Wright and Smith vehicles collided at the right edge of the roadway. Wright's vehicle spun around but stopped on

the roadway. Smith's vehicle veered into the south ditch and rolled several times. Sanvig stopped his vehicle on the shoulder, told his passenger to call 911, and ran over to Smith's vehicle. The deer lay dead on the road. Iowa State Patrol troopers took pictures of the scene.

In January 2010, Smith[1] filed a petition claiming Wright[2] negligently caused his injuries. Wright answered, alleging Smith was negligent and asserting the affirmative defense of sudden emergency. Smith filed a motion in limine challenging the applicability of the doctrine of sudden emergency. Immediately before trial, the court denied the motion, stating "it is apparent . . . the appearance of the deer was a surprise to both the plaintiff and the defendant."

Both parties hired accident reconstruction experts. Our supreme court approved the use of such experts in *Dougherty v. Boyken*, 155 N.W.2d 488, 493 (Iowa 1968). Expert Michael Adams testified at trial for Smith. Expert Gerald Bearden testified at trial by video deposition for Wright. During the pretrial creation of the video deposition, Smith objected to Bearden's testimony on "sudden emergency" and "fault," claiming the rules of evidence did not allow experts to state opinions on legal standards.

During the hearing on Smith's objections, Wright acknowledged "some of these questions probably, you know, do go a little bit over . . . . There are some

---

[1] Plaintiffs include driver Robert Smith and his family. We refer to all plaintiffs collectively as Smith, the driver.
[2] Defendants include Craig Wright and his employer, Angus Industries, Inc. The jury was instructed: "Wright was driving a vehicle owned by Angus Industries and was in the course and scope of his employment with Angus Industries." We refer to both defendants collectively as Wright, the driver.

things in the comments" to the rules of evidence but some of the challenged testimony is "certainly permissible." The court went through each objection separately and reserved ruling on the "sudden emergency" and "fault" objections. The following afternoon, the court overruled Smith's objections, finding the challenged evidence "would be helpful to the jury as fact finders." Wright edited the video of Bearden's testimony in accordance with the court's ruling.

At the April 2013 jury trial, Smith called Wright as his first witness. Wright testified he pulled into the left lane to pass Smith. Wright checked his rearview mirror and blind spot to be sure it was safe to return to the right lane. Wright testified when he again looked forward, he saw a deer on the highway, broadside in front of him. Wright also testified he immediately went for his brakes but there was not enough time; he struck the deer while his vehicle was in the middle of the left lane. Wright explained he had just started to steer his vehicle to the right to return to the right lane when he saw the deer.

Adams, Smith's expert, testified the collision between the vehicles occurred in the right, eastbound lane within a long gradual curve of the roadway. Adams also noted there were no obstructions to the "vision of the eastbound motorists." Adams opined the median was approximately twenty to twenty-five feet wide and Wright "certainly would have had an opportunity to observe" the deer. Adams stated Wright's brakes locked but his vehicle had sensors allowing "the vehicle to actually be steered when the brakes are applied hard or rapidly." Thus, "in addition to braking you also have steering input occurring." Specifically:

> So we can see the tire marks, the frictional resistance, we've got . . . heavy braking and yawing occurring. We've got the [Wright]

vehicle rotating to almost twenty degrees at this point and the impact. This is 115 feet. This distance is being traveled at about 1.2 to 1.3 seconds, very quickly . . . .

. . . .

Q. Given that the time interval of 1.2 seconds, from the time that the Wright vehicle goes across the center line into Dr. Smith's lane, was there time enough for Dr. Smith to do anything to avoid being struck by the Wright vehicle? A. . . . By the time [Smith would] realize [the Wright vehicle] was starting to encroach, [Smith] would have less than a second. So about all he could do is hit his brakes and try to move to the right is about what he'd be able to initiate.

Adams stated no physical evidence showed Smith hit his brakes. Also, the deer would not have caused Wright's airbag to deploy but rather the airbag deployed when Wright's vehicle struck Smith's vehicle. Adams explained there is no physical evidence showing the point in the roadway where Wright struck the deer and no way to quantify how long Wright's vehicle "traveled before the brakes actually applied."

Adams had reviewed expert Bearden's video deposition and "vehemently" disagreed with Bearden's characterization of Wright's vehicle making "a gradual slow turn. [Wright made] an abrupt quick veering maneuver" before the cars collided. "When you throw in seventy miles per hour with the limited roadway friction available to [Wright] to accommodate both the braking and steering input here, that's a very abrupt steering maneuver."

Sanvig testified he was traveling 400 to 450 yards behind Smith's vehicle. Sanvig remembered letting out a startled yell when he saw Wright's vehicle swerve to the right. Sanvig saw Smith's vehicle roll several times before coming to rest in the south ditch of the highway.

Smith testified Wright moved into the left lane, passed him, and remained in the left lane until approximately ten car lengths separated their vehicles. When Smith observed a "puff" of flying debris coming from the front of Wright's vehicle, he tapped his brakes to turn off his cruise control and then moved over to the right shoulder of the road. Smith did not hit his brakes—"I thought I really had time and room to slide around him on the right."

Smith testified to seeing Wright's vehicle continue to travel "absolutely straight in its path" in the left lane for approximately seven to ten seconds without braking. After that time period, Smith saw Wright apply his brakes and heard Wright's tires squeal loudly. Simultaneously, Smith saw Wright swerve sharply to the right. Just before the vehicles collided, Smith saw Wright wrestling the steering wheel to the right while Wright's hands were at the ten and two o'clock positions.

In the video deposition played for the jury, Bearden opined Wright's air bag deployed when Wright struck the deer. Based on his review of the damage patterns and the photographs of the vehicles, Bearden believed the Smith vehicle struck the Wright vehicle. Bearden also testified the skid marks and their "curvature" showing the "travel path" of the Wright vehicle "would indicate that this was not a sudden over-steer or jerking to the right" and "shows that the [Wright] vehicle made a gradual curve . . . from left to right." Bearden testified, based on the physical evidence and the statements of the drivers—potentially traveling sixty miles per hour—Smith had a little less than four seconds to apply

his brakes. Bearden also testified to fault and sudden emergency as detailed extensively below.

The jury returned a verdict in favor of Wright and answered special verdict questions: "Was the defendant at fault? ANSWER: No"; and "Have the defendants proven their legal defense of sudden emergency? ANSWER: Yes." The court denied Smith's motion for new trial, and this appeal followed.

## II. Scope and Standards of Review

We review the district court's denial of a motion for new trial based on the grounds asserted in the motion. *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823 (Iowa 2000).

We review Smith's claim the court improperly admitted portions of expert testimony for abuse of discretion. *See Ranes v. Adams Lab. Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). We will reverse a district court's ruling admitting expert testimony only when the record shows the court's exercise of discretion was for grounds or reasons "clearly untenable or to an extent clearly unreasonable." *Id.*

"The trial court has a duty to instruct a jury on all legal issues in a case." *Anderson v. Webster City Comm. Sch. Dist.*, 620 N.W.2d 263, 265 (Iowa 2000). We review Smith's challenge to the submission of the jury instruction on sudden emergency for the correction of errors at law. *See id.* Wright was entitled to have his legal theory submitted to the jury if the theory was supported by substantial evidence in the record. *See Weyerhaeuser*, 620 N.W.2d at 823. "In reviewing whether a sudden emergency instruction was properly submitted, we

view the evidence in the light most favorable to [Wright], the party asserting the defense." *See Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014).

## III. Analysis

### A. Did expert witness Bearden improperly testify to legal conclusions?

Smith claims the district court abused its discretion by allowing the jury to hear improper expert testimony and the court's rulings constituted prejudicial error. Specifically, Smith asserts the court improperly allowed defense expert Bearden to state opinions as to two legal standards—"fault" and "sudden emergency."

The court instructed the jury on comparative fault: "In these instructions I will be using the term 'fault.' Fault means[3] one or more acts or omissions toward the person and property of another which constitutes negligence."

The court instructed the jury that Smith claimed "Wright was at fault" and to prove "fault" Smith must prove Wright was negligent by (1) failing to keep a proper lookout, and/or (2) turning his vehicle from a direct course on the highway or changing lanes in an unsafe manner, and/or (3) failing to keep his vehicle under control. Over Smith's objections, the court admitted the following italicized testimony from Bearden:

> Q. What should a driver do before changing lanes? A. He should check to make sure that any lane change can be made safely and without interfering [with] any other traffic that might be I the area. So you would check your mirrors and also depending on

---

[3] The court also instructed: Wright claimed plaintiff Smith "was at fault" by (1) failing to maintain control of his vehicle, and/or (2) failing to stop in a safe and assured distance, and/or (3) failing to keep a proper lookout.

the landscape and configuration of the roadway, you would also maybe visibly check the lane that you [wanted] to move into to make sure that it was clear.

. . . .

Q. What did [Wright] say in his deposition that he did? A. He basically stated that he had checked his mirror and that he also checked the right lane over his shoulder to make sure it was clear in anticipation of changing lanes.

*Q. Do you find any fault with that behavior? A. No, I find no fault in that action.*

*. . . .*

*Q. . . . Wright then testified that he either hit the deer or immediately braked, hit the deer. Is that—do you find any fault with that reaction to the deer being in front of him? A. No, I do not find that behavior or that reaction unreasonable.*

Also on the issue of Wright's negligence, the court instructed on Wright's affirmative defense of sudden emergency:

A sudden emergency is an unforeseen combination of circumstances that calls for immediate action or a sudden or unexpected occasion for action. A driver of a vehicle, who through no fault of his own, is placed in a sudden emergency, is not chargeable with negligence if the driver exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances.

*See* Iowa Civil Jury Instruction No. 600.75;[4] *see also Weiss v. Bal*, 501 N.W.2d 478, 480 (Iowa 1993) (stating someone faced with a sudden emergency "is not held to the same accuracy of judgment" as one who has "time to deliberate").

---

[4] The district court's sudden emergency instruction was accompanied by an instruction on legal excuse. Instruction No. 18, based on Iowa Civil Jury Instruction 600.74, stated:

[Wright] claims that if you find that he violated the law in the operation of the vehicle, he had a legal excuse for doing so because of a sudden emergency, and therefore, is not negligent . . . . The burden is on [Wright] to establish as a legal excuse:
1. Anything that would make complying with the law impossible.
2. Anything over which the driver has no control which places his vehicle in a position contrary to the law.
3. Failure to obey the law when the driver is confronted with a sudden emergency not of his own making.

Smith objected to the following—defense counsel asked: "Do you have an opinion as to whether or not Mr. Craig Wright was confronted with an unforeseen combination of circumstances when he struck the deer on October 26 of 2009? Bearden answered, "Yes."

> Q. What's that opinion? A. It's my opinion that Mr. Wright was confronted with a sudden emergency type situation. And when a deer proceeded out in front of his vehicle, he was unable to avoid the deer, struck the deer resulting in the deployment of the air bag and also resulted in Mr. Wright's vehicle making a slow transfer from the left lane into the right lane of the roadway to where he was ultimately struck by Mr. Smith's vehicle.

Finally, Smith also objected to Bearden's testimony:

> Q. In your opinion was Mr. Wright confronted with an unforeseen combination of circumstances which called for immediate action when the deer jumped in front of him? A. That would be my opinion, yes.
> Q. Was he confronted with a perplexing contingency or complication of circumstances? A. In my opinion, yes.
> Q. Was he confronted with a sudden or unexpected occasion for action, exigency, or pressing necessity? A. Yes.
> Q. After striking the deer, do you have an opinion as to whether or not he acted as a reasonable and prudent driver? A. Yes, I found no evidence to indicate that he acted unreasonably.
> Q. Before or after the collision with the deer? A. Correct.

Smith claims this opinion testimony closely tracks the language of the final jury instructions and inappropriately states an opinion regarding a legal standard—whether Wright faced a "sudden emergency" and acted "as a reasonable driver," and whether Wright had "any fault." Smith argues this "is

---

4. An excuse or exception provided by the law.
If you find that Craig Wright has violated the law as submitted to you in other instructions, and that he has established a legal defense for doing so under any one of the four questions [above], then you should find that Craig Wright is not negligent for violating the particular law involved.

exactly the kind of 'whether X was negligent question'" excluded by the rules of evidence.

Wright responds Bearden used the terms in their ordinary sense and not in any legal sense. Wright also claims the "fault" testimony was merely an opinion regarding operative facts—actions Wright made during the sequence of events leading up to the accident with Smith—and cites *United Central Bank of Des Moines v. Kruse*, 439 N.W.2d 849, 852 (Iowa 1989) ("The rule prohibiting legal opinions as to domestic law does not always apply, however, in situations where the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case rather than a rule of decision for deciding the case.").

Smith replies that by defense counsel going through every action Wright says he did and scrubbing it of "fault," the expert thereby opines Wright met the applicable legal standard of care and that, in any event, he should enjoy the protection of the sudden emergency doctrine since he acted reasonably carefully under the circumstances. Smith concludes: "This expert testimony regarding whether or not certain legal standards are met is inadmissible."

We employ a liberal rule allowing "expert opinion testimony if it will aid the jury and is based on special training, experience, or knowledge with respect to the issue in question." *Bornn v. Madagan*, 414 N.W.2d 646, 647 (Iowa Ct. App. 1987). An expert's opinion upon the ultimate fact or controlling issue in a case is not an invasion of the province of the jury and is admissible. Iowa R. Evid. 5.704; *see Bornn*, 414 N.W.2d at 649 (allowing opinion on time and distance available

to avoid collision based on expertise in finding "answers to such things as time, distance, speed and various aspects of accidents which can be determined from the physical facts by the application of math and science"); *see also State v. Dvorsky*, 322 N.W.2d 62, 64 (Iowa 1982) (admitting deputy's opinion of car's minimum speed based upon his investigation, the yaw marks, damage to the vehicles, and experimental tests).

But an expert witness may not give opinion testimony on matters of domestic law[5] or mixed questions of facts and law, for example, "a person was negligent or not negligent." *Grismore v. Consol. Prods., Co.*, 5 N.W.2d 656, 663 (Iowa 1942). Accordingly, "an expert witness is not permitted to state a legal conclusion" and when "the legal conclusion is a rule of decision to be applied by the . . . jury in deciding the case; it is not a proper subject for expert testimony." *Terrell v. Reinecker*, 482 N.W.2d 428, 430 (Iowa 1992) (ruling testimony driver "failed to yield the right-of-way," while not stating negligence had occurred, "extended too far into the realm of legal contents of a motor vehicle statute" and "was inadmissible because it called for a conclusion of law in addition to the operative facts"). The legal-conclusion concept is explained in the comment to rule 5.704:

> [W]hile this section and prior Iowa case law abolish the so-called ultimate issue rule, testimony from experts is not without limitations. *Experts are not to state opinions as to legal standards.* On this basis, questions such as whether X was negligent or whether a product was unreasonably dangerous may be excluded.

---

[5] In contrast to proof of foreign law, which may be the subject of expert testimony, domestic law is properly considered and determined by the court. *United States v. Oliveros*, 275 F.3d 1299, 1306–07 (11th Cir. 2001).

Iowa R. Evid. 5.704, cmt. (emphasis added); *see Miller v. Bonar*, 337 N.W.2d 523, 529 (Iowa 1983) (finding trooper's opinion on laws defendant violated by "his attempt to pass in a no-passing zone" was improper expert testimony); *Schlichte v. Franklin Troy Trucks*, 265 N.W.2d 725, 730 (Iowa 1978) (asking witness if the skid marks indicated a violation of speed laws was an improper question calling for a "legal conclusion").

In *Bornn*, this court compared and contrasted testimony from accident reconstruction expert Pavlovic—allowed into evidence—and the proposed testimony from a deputy and a trooper—not allowed into evidence:

> Pavlovic's testimony did not state the "cause" of the accident, in the sense of direct testimony *allocating fault*, but was rather a chronological description of the series of events the occurrence of which the evidence supported. Compiling and testifying to such conclusions is the nature of Pavlovic's profession. *He did not testify to either party's fault* or negligence.
> . . . .
> We [stated earlier] that Pavlovic's testimony did not directly address the "cause" of the collision in terms of fault. This is in stark contrast to the testimony proposed to be elicited from [trooper] Mossman and [deputy] Workman. Pavlovic testified as to "how" the accident took place in terms of a chronological series of events; Mossman's and Workman's proposed testimony was directed towards *"why" the accident took place in terms of relative fault*. Whereas the former opinion dealt only with a mechanical rendition of events, the latter opinion deals with a conclusion as to legal liability. Whereas the former opinion looks for the storyline, the latter opinion seeks the moral. We think the [proposed] testimony from Mossman and Workman would have constituted a legal conclusion on domestic law, i.e., that [defendant] had failed to yield the right-of-way to [plaintiff]. It was therefore properly disallowed. In addition . . . testimony which essentially relates *an opinion as to the relative fault of the parties is [not] a proper subject of expert testimony*.

414 N.W.2d at 648-49 (emphasis added) (allowing expert's testimony the time and the distance were available to a driver to avoid the collision).

The prohibition against an expert witness stating a legal conclusion "is modified somewhat if a legal issue is raised in such a way as to become a necessary operative fact." *Terrell*, 482 N.W.2d at 429 (rejecting operative fact argument and ruling admission of opinion was not harmless error because jury might have believed the accident was caused by driver's "failure to yield" on the "basis of the officer's improper testimony"). A legal issue becomes a "necessary operative fact" rather than the "rule of decision" for resolving a case when, for example, a banker's misrepresentation of legal rights in a mortgage foreclosure action is a valid subject of expert testimony. *See United Cent. Bank of Des Moines*, 439 N.W.2d at 852. We do not have that kind of "case within a case" here.

Wright admits an expert witness cannot offer a legal conclusion or opine "whether the facts of the case meet a given legal standard." *See In re Detention of Palmer*, 691 N.W.2d 413, 419 (Iowa 2005) ("Importantly, the opinion must be helpful to the trier of fact under rules 5.701 and 5.702. Thus, a witness cannot opine on . . . whether the facts of the case meet a given legal standard. Such an opinion would be of no value to the jury."). Citing the dissent in *Terrell*, Wright asserts Bearden used the terms "sudden emergency" and "fault" and the other challenged testimony in the context of operative facts and such language constitutes "commonly used descriptive phrases with ordinary meaning." *See* 482 N.W.2d at 430-31 (Andreasen, J., dissenting) (urging the court to overrule

*Bornn* and to conclude the "term 'failure to yield' is a commonly used descriptive phrase with ordinary meaning, which does not necessarily imply a legal conclusion").

The admissibility of an expert's opinion on "sudden emergency" was discussed in our supreme court's divided ruling in *Thavenet v. Davis*, 589 N.W.2d 233, 234 (Iowa 1999). Plaintiff Thavenet was driving his vehicle eastbound on the interstate. *Thavenet*, 589 N.W.2d at 234. Defendant Davis, driving a semi-truck without a trailer, was third in a row of three semis in the left, westbound lane. *Id.* A semi-truck driving west in the right lane jackknifed. Davis swerved to the left, crossed the median, entered the eastbound lanes, and collided with Thavenet's vehicle. *Id.*

Defense expert Swyers "used the term sudden emergency" in his answers to interrogatories. *Id.* Thereafter, plaintiffs questioned Swyers at his deposition:

> Q. . . . I've looked at the answer to your interrogatory, and . . . you say that the [right-lane] truck jackknifed, creating a sudden emergency for Mr. Davis. I wonder if you would define for me how you are using the term "sudden emergency." A. Because when he started to jackknife, the vehicle that was in front of Mr. Davis started to . . . slow down very rapidly, which means Mr. Davis had to react to that very rapidly."

*Id.* at 237-38 (Carter, J., dissenting). Plaintiffs sought to introduce other portions of Swyers's deposition testimony[6] at trial but objected to his testimony on sudden emergency, stating:

> Swyers was asked as a trucking expert to act as an accident reconstructionist and decide why . . . the accident took place and

---

[6] Swyers reviewed Davis's testimony and opined that Davis "at that speed following that close behind a vehicle was not giving him enough room for his stopping distance to actually be able to safely stop."

he did so in answer to an interrogatory. [During his deposition,] "I asked him about his interrogatory answer and I asked him what he meant by certain legal terms, one of them being sudden emergency . . . . [H]e was acting outside of his area of expertise as a trucking expert . . . when he used the legal term sudden emergency . . . ."

*Id.* at 237 (Carter, J., dissenting).

At trial, the district court concluded "sudden emergency" is "a plain English term" and there was no "harm in using it in this testimony." *Id.* (Carter, J., dissenting). The plaintiffs then chose not to offer Swyers's deposition testimony, "being concerned that prejudice would result from reading the expert's legal conclusions to the jury." *Id.* at 234. Plaintiffs appealed the defense verdict, claiming "their tactical decision was a necessary consequence of the court's [erroneous] ruling" and prejudiced their case. *Id.*

Citing approvingly to the committee comments to Iowa Rule of Evidence 704 and to *Terrell* and *Bonar*, the six-justice majority agreed with plaintiffs and remanded for a new trial. *Id.* at 235-36. The supreme court ruled inadmissible "Swyers' testimony . . . the primary cause of the collision was the jackknifed truck which caused Davis to be faced with a sudden emergency." *Id.* A three-justice dissent disagreed, taking the position advanced here by defendant Wright: "I agree with the district court that this answer was not the statement of a legal conclusion but rather a description of events using plain English." *Id.* at 238 (Carter, J., dissenting).

We find *Thavenet* and *Bornn* controlling and applicable to the specific testimony challenged on appeal. After considering Bearden's testimony— detailed above—in the context of the jury instructions and case law, we conclude

the district court abused its discretion in admitting the testimony. This testimony constituted an expert's opinions on legal standards and on legal standards as applied to the facts of the collision in this case. Trial counsel is not allowed to call an expert witness to testify to a legal conclusion or to tell the jurors how they should apply the domestic law in the jury instructions to the facts. *See Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 32 (Iowa 1982) (stating expert could not opine Farm Bureau acted in bad faith when bad faith "is the standard by which Farm Bureau's liability must be measured" and also stating expert could not opine Farm Bureau did not conduct "a sufficient investigation"—"in effect an opinion that [Farm Bureau's] attorney's actions did not meet the requisite standard of care").

We conclude Bearden's challenged testimony "was directed towards 'why' the accident took place in terms of relative fault" and directly allocated "fault" along with stating conclusions on legal liability concerning our "sudden emergency" standards—impermissible testimony addressing the "moral," not the "storyline." *See Bornn*, 414 N.W.2d at 648-49.

**B. Did the improperly admitted expert testimony prejudice Smith?**

Although Wright contends otherwise, we do not find the error was harmless. Bearden's testimony was a key part of the defense case and directly challenged Adams's expert testimony (1) Wright could and did steer his car sharply to the right, and (2) Wright's airbag deployed when the cars collided. "The jury may well have relied on" Bearden's expert opinion Wright faced a "sudden emergency" not of his own making and "there was no evidence" Wright

acted "unreasonably." Also, "the jury may well have relied on" Bearden's expert opinion Wright had no "fault" with regard to his driving actions. *See Terrell*, 482 N.W.2d at 430 ("The jury may well have relied on a belief that the accident was caused by Patricia Terrell's failure to yield, and done so on the basis of the officer's improper testimony."). Accordingly, Smith was prejudiced by the admission of the improper opinion testimony, and we reverse and remand for a new trial.[7]

**C.    Did sufficient evidence support an instruction on sudden emergency?**

For guidance at the new trial, we address Smith's claims the district court should not have instructed the jury on sudden emergency. This doctrine allows a jury to excuse a defendant's failure to obey traffic laws when the defendant is confronted with a sudden emergency "not of the defendant's own making." *Foster v. Ankrum*, 636 N.W.2d 104, 106 (Iowa 2001). The burden rests on Wright, the party claiming legal excuse, to show his conduct did not contribute to emergency. *Freese v. Lemmon*, 267 N.W.2d 680, 684-85 (Iowa 1978).

The sudden emergency' doctrine recognizes "'a person who is confronted with an emergency situation is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must

---

[7] We find no merit to Wright's claim the challenged testimony was cumulative and therefore not prejudicial. Wright points to testimony by plaintiff's expert, Adams, on cross-examination. As in *Thavenet*, Smith knew the court's ruling on such evidence and, knowing the evidence would be heard, Smith made a tactical decision regarding his expert's live testimony in an attempt to rebut Bearden's objectionable testimony. *See* 589 N.W.2d at 236 (stating Hobson's choice prejudiced plaintiff and prevented a fair trial).

make a speedy decision, based largely upon impulse or guess.'" *Vasconez v. Mills*, 651 N.W.2d 48, 54 (Iowa 2002) (quoting *Jones v. Blair*, 387 N.W.2d 349, 352 (Iowa 1986)). To excuse otherwise negligent conduct, the emergency event must compel "if not an instantaneous response, certainly something fairly close to that." *Foster*, 636 N.W.2d at 106.

Our supreme court has "repeatedly defined sudden emergency as '(1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; [or] (3) a sudden or unexpected occasion for action, exigency, pressing necessity.'" *Hagenow*, 842 N.W.2d at 674 (quoting *Vasconez*, 651 N.W.2d at 54); *see Jones*, 387 N.W.2d at 353 (noting icy road conditions coupled "with the unexpected maneuver of plaintiffs' car" could constitute sudden emergency); *Bannon v. Pfiffner*, 333 N.W.2d 464, 470 (Iowa 1983) (holding an "unforeseen combination of circumstances" could exist when driver was suddenly confronted with "an unanticipated patch of ice"); *Bangs v. Keifer*, 174 N.W.2d 372, 375-79 (Iowa 1970) (approving use of the instruction when a driver was unable to stop at a stop sign due to a stuck accelerator).

But a district court should not instruct on sudden emergency "if the 'emergency' is of the type that a reasonably prudent person should be prepared for or if the circumstances allowed a defendant time to assess the situation." *See Hagenow*, 842 N.W.2d at 674 (*citing Vasconez*, 651 N.W.2d at 54-55 (holding instruction not appropriate when driver failed to see biker on the side of the road—the blinding effect of the sun's rays was not an unexpected or sudden

condition on the driver's familiar route); *Foster*, 636 N.W.2d at 107 (holding instruction not appropriate when defendant "had ten to fifteen seconds to deliberate"—sufficient time "to assess the situation, make some judgment calls, and drive off without striking the plaintiff-bystander"); *Weiss*, 501 N.W.2d at 481-82 (finding instruction improper where the situation is not uncommon but rather is foreseeable—"[t]he facts reveal no more than the everyday hazard of driving through a school parking lot and the not uncommon appearance of pedestrians crossing the traveled way to reach their parked cars")); *see also Beyer v. Todd*, 601 N.W.2d 35, 39 (Iowa 1999) (ruling a "sudden stop in traffic on a divided, four-lane highway, during a busy time of day . . . is not an uncommon or unforeseen event" and is not "like a deer bounding onto the road at night directly in front of a driver" as in *Mosell v. Estate of Marks*, 526 N.W.2d 179, 182 (Iowa Ct. App. 1994)).

Smith claims the court should not have instructed the jury on sudden emergency because: (1) under the facts of this case, Wright's encounter with the deer was a foreseeable event; (2) Wright's own negligent conduct created the "emergency" situation; and (3) Wright failed to conduct himself as a reasonably careful person would have in a similar situation.

In finding the evidence supported the sudden emergency instruction, the district court noted the depositions of the experts revealed the parties' different recollections: Wright, "upon seeing the deer, attempted to hit the brakes or did hit the brakes immediately upon seeing the deer." At trial, Wright testified:

> I visually saw the deer, went for my brakes, felt the impact of the deer and the debris, the air bags went off, hear the squealing tires,

then I hear metal on metal and then spun around until I stop, and it seemed like just a blink of an eye.

The district court contrasted Smith's recollection: Smith "saw that there was a delay before [Wright] hit the brakes, he estimated seven to ten seconds, and [Smith] also believed [Wright] attempted to steer the car to the right." At trial, Smith so testified.

The district court concluded, "those are jury questions—the jury can analyze and take into account that evidence and then compare it to the jury instruction [setting out the law on] the sudden emergency doctrine." We agree and recognize the "extent and nature of an emergency is usually a fact question and, if there is substantial evidence that an emergency had developed, the jury should be instructed thereon." *Bangs*, 174 N.W.2d at 374.

Viewing the evidence in the light most favorable to Wright, just before Wright saw the deer, he was checking his rearview mirror and blind spot before returning to the right lane after passing Smith. Because neither Smith nor Sanvig saw the deer, a reasonable jury could conclude the deer was not observable in advance and unpredictably started across the highway while Wright was checking his clearance. Accordingly, we find no error in giving the instruction. *See Mosell*, 526 N.W.2d 179, 182 (concluding a deer bounding out in front of the vehicle "must certainly be viewed as unforeseeable") (citing *Whitehead v. Cruse*, 279 So. 2d 802 (La. Ct. App. 1973) (finding a large dog running onto the highway created a sudden emergency)); *see also Kappelman v. Lutz*, 217 P.3d 286, 291 (Wash. 2009) (describing deer as "quick, erratic, and unpredictable" and the

"appearance of a deer on the road" as "rare enough that a driver might not reasonably anticipate its occurrence").

**REVERSED AND REMANDED.**