95 N.J. Super. 338 (1967)
231 A.2d 229
SYLVIA LEVINE AND LOUIS LEVINE, PLAINTIFFS-APPELLANTS,
v.
VINCENT SCAGLIONE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1967.
Decided June 19, 1967.
*339 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Jack Solomon argued the cause for appellants.
Mr. Edward E. Kuebler argued the cause for respondent.
The opinion of the court was delivered by KOLOVSKY, J.A.D.
In this automobile negligence-pedestrian knock-down case, plaintiffs appeal from a judgment for *340 defendant entered after a jury trial and from the trial court's denial of their motion for a new trial.
Plaintiffs urge three grounds for reversal. The most significant is the claim that the verdict was against the weight of the evidence and that the trial court erred in denying the motion for a new trial.
The only verdict returned by the jury was that "the defendant [was] not guilty of negligence." Our consideration is therefore limited to that finding. Kulbacki v. Sobchinsky, 38 N.J. 435, 452 (1962). We may not consider whether a general verdict of no cause for action would be immune from attack because of other issues in the case, including that of contributory negligence. There was no general verdict; the jurors ceased their deliberations, as the court's charge had expressly directed them to do, once they had decided that defendant was not negligent.
Applying the rationale of Kulbacki, supra, 38 N.J., at pp. 446-452, we have reviewed and considered the record and the trial court's reasons for denying a new trial. We conclude that under the proofs in this case, there was no reasonable justification for a finding that defendant was not negligent and that there has been "a manifest denial of justice under the law" mandating a new trial.
Mrs. Levine testified that she was standing south of the center line of Prince Street when she was struck. That testimony is confirmed by the other relevant evidence in the case, the testimony of the policeman who measured the distances from the southerly side of Prince Street to Mrs. Levine's body, and the admissions made by defendant in his testimony and in his answers to interrogatories. From that evidence it appears that defendant's westbound automobile was over the center line of Prince Street when, as defendant says, "the side of [its] left front fender" came in contact with Mrs. Levine.
Defendant testified that he was driving in a westerly direction on Prince Street intending to make a left turn into Morris Avenue. Morris Avenue runs in a southwesterly direction, *341 beginning at a point in Prince Street a short distance west of the point of impact. Defendant did not see Mrs. Levine at any time before the accident; the first time he saw her she was "sliding to the street at a point immediately next to the left side of my car near the windshield."
Defendant described what happened as follows:
"I was going along keeping to my right and then all of a sudden the reflection of the sun hit my eyes and I was blinded momentarily. After I regained my vision, I heard a noise and I applied my brakes and I stopped as I looked out I see Mrs. Levine laying on the floor."
By his own testimony defendant, when blinded by the sun, did nothing either by way of applying his brakes or lowering his sun visor. He continued driving until he regained his vision and heard the noise of impact; then for the first time he applied his brakes.
Defendant's conduct was incompatible with the jury's finding that he was not negligent. "No man is entitled to operate an automobile through a public street blindfolded." Hammond v. Morrison, 90 N.J.L. 15, 16 (Sup. Ct. 1917). The exercise of reasonable care requires that a driver in the predicament in which defendant found himself take action immediately to restore his vision, and if that requires that he slow down or come to a stop, that he do so instead of proceeding onward as if nothing untoward had happened. Hammond v. Morrison, supra; Osbun v. De Young, 99 N.J.L. 204, 208 (E. & A. 1923); State v. Kellow, 136 N.J.L. 1, 5 (Sup. Ct. 1947); Barth v. Reichert, 34 Ill. App.2d 472, 181 N.E.2d 609 (App. Ct. 1962); Annotation, "Automobiles  Blinding Lights," 22 A.L.R.2d 292, 408 (1952).
Indeed, defendant's admitted familiarity with Prince Street, which he travelled twice a day to and from work, should have impelled him some distance before he reached the scene of the accident to lower his sun visor to shade his eyes against the setting sun which faced him as he proceeded in a westerly direction.
The suggestion by the trial judge in his ruling denying the motion for a new trial that the jury could have determined *342 that defendant did not have "time to stop after he was blinded" finds no support in the record. More meaningful is defendant's admission that he made no effort to stop or slow down and kept on driving although blinded.
It may be noted that the court's charge merely defined negligence generally. Plaintiff did not request a charge as to the duty of a driver temporarily blinded by the sun, and the charge as given made no reference thereto.
We treat next the other two grounds of appeal argued by plaintiffs since the same questions will undoubtedly arise at the new trial. The court did not err in submitting the issue of contributory negligence to the jury. Under the proofs in this case
"Fair-minded men of ordinary prudence might well differ * * * as to whether plaintiff acted as an ordinarily prudent man would act. It follows that the issue of contributory negligence was not one of law for determination by the court but rather one of fact for determination by the jury." Kopec v. Kakowski, 34 N.J. 243, 247 (1961).
The final ground of appeal relates to the admission of testimony describing defendant's unsuccessful efforts to obtain a physical examination of plaintiff prior to the institution of suit.
Although the accident took place on April 3, 1962, the complaint herein was not filed until almost two years later, on March 12, 1964. Plaintiff had, however, consulted Mr. Solomon, her present attorney, within days after the accident.
Mr. Barber, an investigator for defendant's insurance carrier, testified that he telephoned Mr. Solomon's office on April 23, 1962 and then spoke to Mr. Solomon on May 4, 1962 and requested a physical examination of plaintiff. According to Barber, Mr. Solomon said "that he would arrange in the future some date, a medical examination of his client." Barber detailed his unsuccessful efforts to obtain the physical examination, including a conversation of September 7, 1962 in which Mr. Solomon said he would have his client see defendant's examining physician, Dr. Butenas, and conversations on January 21, February 4, June 10, September 10 and *343 December 20, 1963, in which Barber repeated his requests that Mrs. Levine be examined by Dr. Butenas. A similar conversation took place early in May 1964, shortly after suit had been started. The record discloses that plaintiff was examined by defendant's doctors before trial, by Dr. Butenas on February 9, 1965, and by Dr. Flicker on April 13, 1966.
That the court rules provide a mechanism for obtaining an order for such a physical examination only after suit is instituted  see R.R. 4:25-1  is irrelevant to the issue presented.
In our opinion, evidence indicating that a plaintiff seeking to recover for injuries involved in an accident had refused, without justifiable cause, to submit to a physical examination is admissible. A jury may infer that such refusal indicates that plaintiff has something to hide, a consciousness of the weakness of his cause. 29 Am. Jur.2d, Evidence, §§ 294, 625 (1967); 2 Wigmore, Evidence (3d ed. 1940), § 277, p. 119; § 289, p. 174; Annotation, "Evidence  Refusal of Inspection," 175 A.L.R. 234 (1948); Austin & N.W.R. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 408, 64 L.R.A. 494 (Sup. Ct. 1903); Stack v. New York, N.H. & H.R. Co., 177 Mass. 155, 58 N.E. 686, 687 (Sup. Jud. Ct. 1900).
In Austin & N.W.R. Co. the Supreme Court of Texas, while ruling that it had no power to order plaintiff to submit to a physical examination, said:
"The reason for refusing a physical examination of the plaintiff is not that the defendant is not entitled to have the benefit of the evidence, but because the court has no power to force the plaintiff to submit to such an examination. He has a right to submit or refuse, but, in case he should refuse, the defendant is entitled to have that fact go to the jury to be considered by them in determining upon the credibility and sufficiency of the testimony upon which he seeks to recover. Railroad Co. v. Botsford, 141 U.S. 255, 11 Sup. Ct. 1000, 35 L.Ed. 734. If the jury should believe that the refusal showed a purpose to conceal the truth, they might take the fact into account in weighing the evidence. If a satisfactory reason should be given for the refusal, and other evidence were sufficient, the refusal would not defeat a recovery." (77 S.W., at p. 408)
Here, defendant's unsuccessful attempts to obtain a physical examination extended over a period of almost two years  *344 a period during which, plaintiff claimed at the trial, she was suffering continuously from the effects of the accident. The court did not err in admitting Barber's testimony.
Nor does it matter that, according to plaintiff, she was never advised of the requests made to her attorney that she submit to a physical examination. She had chosen the attorney to present the claim for her. She was chargeable with notice of the requests made of him. See O'Neil v. Bilotta, 18 N.J. Super. 82, 86 (App. Div. 1952), affirmed o.b. 10 N.J. 308 (1952); but cf. Texas & N.O. Ry. Co. v. Rooks, 292 S.W. 536 (Tex. Com. App. 1927).
The judgment is reversed and the cause remanded for a new trial.