Valerie FOSTER, Appellee,

v.

Cassandra Strutz, Defendant,

and

Vince ANKRUM, Appellant.

No. 99–1680.

Supreme Court of Iowa.

Nov. 15, 2001.

Sharon Soorholtz Greer of Cartwright, Druker & Ryden, Marshalltown, for appellant.

Stephen M. Terrill of Terrill & Martens Law Offices, Ames, for appellee.

LARSON, Justice.

One of the defendants in this personal-injury action has appealed a judgment against him, raising issues of sudden emergency, comparative fault, and alleged excessive damages. The court of appeals reversed and remanded on the sudden-emergency ground, and we granted further review. We vacate the court of appeals decision and affirm the judgment of the district court.

## I. *Facts and Prior Proceedings.*

Valerie Foster, the plaintiff, and a friend were passengers in a pickup driven by a third friend. They spotted a vehicle, occupied by the defendants (owned by defendant Vince Ankrum and operated by defendant Cassandra Strutz), sitting in a parking lot. The Foster vehicle pulled into the parking lot as did a third vehicle, which was occupied by several young men in what has been called the "Ruggles" vehicle. The Ruggles vehicle was parked at the northwest corner of the lot, the Ankrum vehicle was parked to the east of the Ruggles vehicle, and the Foster pickup was parked to the south of the other two vehicles.

Just before this accident, Foster was standing alongside the pickup. "All of a sudden" three to five young men from the Ruggles car approached defendant Ankrum as he was sitting in the passenger seat of his car. The young men began yelling at Ankrum, striking him through the open window, and attempting to pull him out of the car. One of the men struck at Ankrum by reaching across the driver's seat. Ankrum shielded Strutz, who was in the driver's seat, by pulling her down into his lap. Ankrum saw a fist come through the driver's window and hit the gearshift. He heard a clicking noise, which he believed placed the car in reverse, although he said he did not realize it at the time. Strutz, seated in the driver's seat but lying across Ankrum's lap, stepped on the accelerator, believing the car was in drive and the car would proceed forward through the parking lot exit. As the car was actually in reverse, the car backed toward the pickup. Foster attempted to pull herself over the side and into the bed of the pickup, but her foot was crushed between the rear bumper of Ankrum's car and the side of the pickup. The time frame of the incident is not clear; there was evidence that, after the altercation began, it was "probably ten or fifteen seconds" before Strutz stepped on the accelerator, "[e]verything happened within a single minute," and "within those two minutes a . . . lot of stuff happened."

Foster sued Ankrum, owner of the vehicle, and Strutz, as the operator. Ankrum and Strutz in turn filed a third-party petition naming one of the assailants as a third-party defendant. The district court refused to give a sudden-emergency instruction, reasoning that "the evidence shows that some time did pass—not a great deal of time admittedly—but some time did pass for the occupants of [Ankrum's] car to assess the situation and make some judgment calls." The court found

that "[t]he circumstances which confronted Ms. Strutz and Mr. Ankrum developed over a period of at least a few minutes.... [A]s a matter of law, Ms. Strutz and Mr. Ankrum were not confronted with a sudden emergency." The court also refused to instruct the jury on comparative fault. The jury found the third-party defendant was not negligent and attributed fifty-five percent of the fault to Ankrum and forty-five percent to Strutz. The jury assessed damages in favor of Foster in the amount of $289,576. Ankrum appealed, claiming the jury should have been instructed as to sudden emergency and Foster's comparative fault, and that the verdict was excessive.

The court of appeals reversed and remanded for a new trial, holding a sudden-emergency instruction should have been given. The court of appeals affirmed the district court's refusal to give a comparative-fault instruction and its ruling that the verdict was not excessive. Foster sought, and we granted, further review.

## II. *The Sudden–Emergency Instruction.*

Ankrum and Strutz requested the following sudden-emergency instruction:

Strutz claims that if you find that she violated the law in the operation of the vehicle, she had a legal excuse for doing so because she was confronted with a sudden emergency and, therefore, is not negligent. A sudden emergency is a combination of circumstances that calls for immediate action or a sudden or unexpected occasion for action. A driver of a vehicle who, through no fault of her own, is placed in a sudden emergency, is not chargeable with negligence if the driver exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances.

This instruction follows our Uniform Instruction. *See* 1 Iowa Civ. Jury Instructions 600.75 (2001).

■■■ The doctrine of sudden emergency allows a fact finder to excuse a defendant's failure to obey statutory law when confronted with an emergency not of the defendant's own making. *Weiss v. Bal,* 501 N.W.2d 478, 480 (Iowa 1993). In addition to excusing a failure to obey statutory law, the doctrine of sudden emergency "also has independent significance in common-law claims." *Id.*

Sudden emergency has been defined as

(1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action, exigency, pressing necessity.

*Bangs v. Keifer,* 174 N.W.2d 372, 374 (Iowa 1970).

■■■ The district court rejected the requested instruction on the ground the emergency was not sudden. The testimony at trial as to the time for the defendant to react to the situation, "given the most favorable construction possible in favor of [Ankrum]," *Greenwood v. Mitchell,* 621 N.W.2d 200, 205 (Iowa 2001), was that it was "probably ten or fifteen seconds" after the altercation began before Strutz stepped on the accelerator. We agree with the district court's assessment: a sudden emergency is "an event that require[s], if not an instantaneous response, certainly something fairly close to that." As we said in *Weiss:*

This is not a case in which a driver was suddenly confronted with oncoming traffic on the wrong side of the road, an unexpected patch of ice, a nonnegligent failure of brakes, or a sudden heart attack.

501 N.W.2d at 482. The defendants had ten to fifteen seconds to think and to act. This was sufficient time, under the circumstances, to assess the situation, make some judgment calls, and drive off without striking the plaintiff.

The doctrine of sudden emergency has fallen into considerable criticism and has even been abandoned in some jurisdictions. *See id.* at 480–81. We have expressed some concern because of the tendency "to unduly emphasize one aspect of the case," although we have not rejected the doctrine. *See id.* at 481. If we were to hold the instruction on sudden emergency was required in the present case, we would not just preserve the doctrine, we would expand it well beyond its appropriate scope. The district court did not err in refusing the instruction.

### III. *The Comparative Fault Issue.*

 Ankrum complains of the trial court's refusal to instruct the jury on the plaintiff's comparative negligence. He contends that, "where [a] pedestrian knows of the great potential for a conflict and remains to observe, the jury should be able to assess that fault." He cites no authority for this proposition, and it seems that a decision by a relatively distant bystander not to flee an altercation between others would generally not rise to the level of negligence. The defendant's assertion that the plaintiff was negligent by "participating in a joint enterprise" is not supported by any evidence. The district court properly refused to instruct the jury as to comparative fault.

### IV. *The Damages.*

The defendant moved for a new trial on the basis the verdict was excessive. A district court ruling on a motion for new trial based on the size of the verdict is reviewed for abuse of discretion. *Kuta v.*

*Newberg,* 600 N.W.2d 280, 284–85 (Iowa 1999).

This plaintiff's injuries were severe; her foot was nearly severed, and she suffers from limitations in the use of her foot that will require future surgeries. We conclude the district court did not abuse its discretion in refusing a new trial on this ground.

### DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.