J. David VASCONEZ, Appellee,

v.

Judy Ann MILLS and Audie Mills, Appellants.

No. 00–1821.

Supreme Court of Iowa.

Sept. 5, 2002.

John T. McCoy of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellants.

Edward J. Gallagher, Jr., and E.J. Gallagher, III, of Gallagher, Langlas & Gallagher, Waterloo, for appellee.

NEUMAN, Justice.

This is an appeal from a judgment for the plaintiff in a suit for injuries sustained by a bicyclist who was struck by a truck while riding on a rural blacktop road. On appeal the defendant truck driver contends the court erred when it refused to submit jury instructions on comparative fault and the "sudden emergency" doctrine. Defendant also contests adverse rulings on two evidentiary objections. Finding no error warranting reversal, we affirm the judgment entered on the jury's verdict.

## I. Background Facts and Proceedings.

A jury could have found the following facts. At approximately 6:30 p.m. on Sep-

tember 9, 1997, plaintiff David Vasconez was riding his bicycle in a westerly direction on D35, a county highway two miles east of Hudson, Iowa. It was clear and sunny. There was little traffic, even though the route served temporarily as a detour for Highway 63. Vasconez, an experienced cyclist, wore a helmet and traveled along the right side of the road within a foot of the pavement's edge. The road's narrow shoulder was unpaved.

Also proceeding westerly on D35 was the defendant, Judy Mills, a contract driver for the U.S. Postal Service. Mills' vehicle was a ten thousand pound straight truck loaded with 1200 pounds of mail. Because she was heading into the setting sun, she wore sunglasses and pulled down her windshield visor to block the sun's rays as best she could. As Mills came over a slight rise she was partially blinded by the sun's glare but could see the center of the pavement. She continued to drive at the posted speed limit of 55 miles per hour as she knew from experience that the sun's effect would be only temporary. Suddenly she heard a "thump" and, looking in her rear-view mirror, saw Vasconez heading over the handlebars of his bicycle into the ditch. She immediately pulled over to check on Vasconez and then drove to a nearby farmhouse to call for help.

Mills told the residents at the farmhouse as well as the officer who investigated the accident that she had been blinded by the sun and had not seen Vasconez before she hit him. For his part, Vasconez has no independent recollection of the event. Evidently due to the mild concussion he suffered, he recalls only that he "came to" sometime later in the hospital feeling as though he had been "hit by a truck."

At the time of the accident, Vasconez—then twenty-six years old—was employed as a fifth grade teacher in Marshalltown. He was hospitalized for two days for physi-cal injuries sustained in the accident—a fractured collarbone, substantial bruising to his left arm, elbow and buttocks, as well as the concussion—and remained home from work for approximately two weeks. Only upon his return to the classroom did the full impact of the collision reveal itself. Fluent in two languages as well as an accomplished musician, Vasconez suddenly found himself unable to speak clearly, recall students' names or organize lesson plans. Formerly affable and easygoing, he became irritable and prone to temper outbursts. Doctors diagnosed his problems with memory, concentration, fatigue, frustration and slurred speech as symptomatic of a closed head injury.

Vasconez brought suit against Mills for personal injuries suffered as a result of her alleged negligent driving. At trial the parties' dispute centered on two main issues: (1) whether Mills' liability for failure to keep a proper lookout should be reduced by fault attributable to Vasconez or excused due to the effect of blinding rays of the sun and, (2) the scope and permanency of Vasconez' closed head injury. Over Mills' objection, the court refused to instruct the jury on the doctrines of comparative fault or sudden emergency, finding no basis in the record to support their submission. The jury returned a verdict for Vasconez totaling $415,651, and this appeal by Mills followed.

Further facts will be detailed as they pertain to the issues on appeal. The parties agree that our appellate review is limited to the correction of errors at law. Iowa R.App. P. 6.4.

## II. Issues on Appeal.

### A. Comparative fault.

Mills argued at trial and contends on appeal that she was entitled to instructions that would permit the jury to apportion

fault against Vasconez both for his alleged "negligen[ce] in the operation of his bicycle" and for his failure to mitigate damages. *See* Iowa Code § 668.1(1) (1999) (defining fault to include "an unreasonable failure to avoid an injury or to mitigate damages"). The district court rejected Mills' contentions, convinced that the evidence, when viewed in the light most favorable to the defendant, did not warrant submission of comparative fault instructions. For the reasons that follow, we agree with the district court.

### 1. Liability.

Parties are entitled to have their legal theories submitted to the jury so long as the instructions embodying those theories correctly state the law, have application to the case and are not otherwise covered in the court's instructions. *Vaughan v. Must, Inc.,* 542 N.W.2d 533, 539 (Iowa 1996). Proposed instructions must enjoy support in the pleadings and substantial evidence in the record. *Beyer v. Todd,* 601 N.W.2d 35, 38 (Iowa 1999). Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion. *Id.* It is axiomatic that if, at the close of all the evidence, the record is insufficient to support a party's theory of recovery or defense, the court need not submit the theory to the jury and may direct a verdict on the issue as a matter of law. *Swift v. Petersen,* 240 Iowa 715, 721–22, 37 N.W.2d 258, 261 (1949).

The instructions proposed by Mills would have advised the jury that a bicyclist is obligated to maintain a proper lookout and, in determining fault, the jury could consider the fact that the bicyclist was voluntarily performing an activity "which he knows involves a risk." Mills argues such instructions were justified here based on testimony elicited from Vasconez and one of his close bicycling companions. Both men acknowledged that, in general, a reasonable bicyclist would be alert to traffic approaching from the rear. They likewise agreed that safe bicycling includes consideration of adverse weather conditions, the width of· the roadway, and the speed and number of motorized vehicles traveling the same route.

The weakness in Mills' argument is that, apart from these witnesses' generalized observations, the record contains absolutely no proof that the accident in question resulted from Vasconez' failure to keep a proper lookout or otherwise avoid foreseeable harm. Mills' own testimony confirmed her belief that Vasconez did nothing wrong to cause this accident. She simply did not see him, an arguably clear breach of *her* duty of lookout. *See McCoy v. Miller,* 257 Iowa 1151, 1157, 136 N.W.2d 332, 336 (1965) (driver's duty of proper lookout "implies being watchful of the movements of the driver's own vehicle in relation to the things seen and which could have been discerned or seen in the exercise of ordinary care"). As for Vasconez' duty of lookout *to the rear,* the law imposed on him "only sufficient observation to establish an awareness of the presence of others *at a time when a maneuver is contemplated which may endanger a following vehicle."* *Id.* at 1157, 136 N.W.2d at 336 (emphasis added). The record contains not the slightest hint that Vasconez turned, swerved or executed any other maneuver prior to Mills' collision with his bicycle. Thus the court committed no error when it deemed the evidence insufficient as a matter of law to engender a jury question on the plaintiff's alleged breach of his duty of lookout.

Two other fundamental principles defeat Mills' alternative ground for the submission of a comparative fault instruction. By statute, a bicyclist in Iowa is subject to the rules of the road and "has

all the rights and duties ... applicable to the driver of a vehicle." Iowa Code § 321.234(2). Mills attempts to fault Vasconez for riding on a county road instead of a bike path, riding alone (thereby reducing his visibility), and riding in a westerly direction near sunset. However none of this conduct is illegal. And ascribing negligence to such choices would be ludicrous if applied to any other motorist. Given the legislative policy implicit in section 321.234(2), we find no basis for the claim that such choices constitute negligence for a bicyclist.

■ Second, Vasconez was entitled to assume that others using the road would obey the law until the circumstances reasonably revealed otherwise. Iowa R.App. P. 6.14(6)(*i*). Under the law, Vasconez was entitled to assume that a vehicle approaching him from behind would see him and respond appropriately. Mills testified that there were no vehicles coming toward her in the opposite lane that would have impeded her ability to easily pass Vasconez, *had she seen him.* Under these facts, Vasconez had no reason—or duty—to take evasive action.

The district court aptly summed up the record and the law this way:

> The only evidence is that plaintiff was riding a bicycle on a road and that's all. There is no evidence that the plaintiff did anything other than ride his bike on a sunny day in a westerly direction. That, to me, does not present substantial evidence on which to base [a] comparative fault instruction with respect to liability.

We agree with the court's conclusion and, accordingly, reject Mills' claim for reversal on this ground.

*2. Mitigation of damages.*

■ Much of the evidence at trial centered on Vasconez' success (or lack thereof) in coping with his disabling head injury. Testimony revealed that physicians treated him with various medications in the months following the accident for severe headaches and accompanying emotional disturbances. He also consulted with and was treated by an occupational therapist, orthopedist, neuropsychologist, chiropractor, rehabilitation specialist, and massage therapist. When Vasconez and his new wife moved from Iowa in connection with her career, he consulted with Michael J. Pedoto, M.D., a brain injury specialist. Vasconez and his wife also participated in a lengthy course of marriage counseling, an effort that ultimately proved to be unsuccessful in saving their marriage.

In clinical notes from early June 2000, Dr. Pedoto reported that a neuropsychologist, Dave Tranel, believed that Vasconez' lingering emotional distress might not be entirely related to injury stemming from the accident and that further psychotherapy might be valuable. Tranel testified similarly at trial. The record also reveals that Vasconez declined Dr. Pedoto's referral to another psychologist, expressing his belief that "he had reached a static level with counseling" and preferred to try "manag[ing] things on his own."

Based on this record, Mills sought an instruction permitting the jury to find that Vasconez failed to mitigate his damages. The district court concluded the record contained insufficient proof upon which to base such an instruction. We find no error in the ruling.

■ Before a failure-to-mitigate claim may be submitted, the defendant must introduce substantial evidence that (1) there was something the plaintiff could have done to mitigate his loss, (2) requiring the plaintiff to do so was reasonable under the circumstances, (3) the plaintiff acted unreasonably in failing to undertake

the mitigating activity, and (4) a causal connection exists between the plaintiff's failure to mitigate and the damages claimed. *Greenwood v. Mitchell*, 621 N.W.2d 200, 205 (Iowa 2001). The defendant shoulders the burden of proving these four elements of the defense. *Id.* at 206.

Here, neither of the professionals who recommended further counseling was questioned about Vasconez' failure to heed their suggestions so as to permit the jury to assess the reasonableness of their advice or the unreasonableness of his response. Nor did the defendant tender proof that additional counseling would have mitigated the damages sustained. As the district court noted, nothing in the record suggests that Vasconez' decision to forgo additional counseling "was against medical advice." In the absence of proof on the essential elements of the mitigation-of-damages claim, the district court correctly refused to submit it.

### B. Sudden emergency doctrine.

■ In her amended answer, Mills claimed that any failure on her part to keep a proper lookout as required by law "was legally excused and/or caused by a sudden emergency" because she was "partially blinded by the sun at the time of the accident." At trial she submitted a proposed instruction regarding the issue of legal excuse but, over her objection, the court directed a verdict in favor of Vasconez on the defense. Mills challenges the court's ruling on appeal, contending factual questions existed concerning whether she was confronted by an emergency and acted reasonably in response to it. Like the district court, we are convinced the record contains neither legal nor factual support for submission of the defense.

■ The sudden emergency doctrine "allows a fact finder to excuse a defendant's failure to obey statutory law

when confronted with an emergency not of the defendant's own making." *Foster v. Ankrum*, 636 N.W.2d 104, 106 (Iowa 2001). A "sudden emergency" is defined as:

(1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action, exigency, pressing necessity.

*Id.* (quoting *Bangs v. Keifer*, 174 N.W.2d 372, 374 (Iowa 1970)). The doctrine "reflects the realization that a person who is confronted with an emergency situation is 'left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based largely upon impulse or guess.'" *Jones v. Blair*, 387 N.W.2d 349, 352 (Iowa 1986) (quoting W. Prosser, *The Law of Torts* § 33, at 169 (4th ed.1971)). To excuse otherwise unlawful or negligent conduct, the event characterized as an emergency must compel "if not an instantaneous response, certainly something fairly close to that." *Foster*, 636 N.W.2d at 106.

■ The burden of proving a sudden emergency falls on the person asserting the excuse. *Jones*, 387 N.W.2d at 352. "[A] person is not entitled to the benefit of the emergency rule if it clearly appears [s]he either had actual knowledge of a dangerous situation or in the exercise of reasonable care could have such knowledge in time to act in relation thereto." *Rice v. McDonald*, 258 Iowa 372, 380, 138 N.W.2d 889, 894 (1965).

Here we are convinced, as was the district court, that the "sunlight" situation was common and expected, and, while the blinding effect of the rays was not an emergency of Mills' own making, it was a situation in which Mills failed to conduct herself properly. First, Mills' own testi-

mony reveals that she was well-acquainted with this route, having driven it "several times" in the days preceding the accident. Familiar with the challenge of driving west into the sun over the slight rises in this roadway, Mills testified the blinding rays were, "just a temporary thing 'til you got to the level ground." Plainly Mills was not faced with an *unexpected* or *sudden* condition. *See Weiss v. Bal*, 501 N.W.2d 478, 481 (Iowa 1993) (unfair to permit jury to excuse driver's conduct when alleged "emergency" is not uncommon but foreseeable).

Second, although neither the setting sun nor its blinding rays were a product of any "fault" on Mills' part, because the condition was known and foreseeable she was required to respond to the situation in a reasonable manner. *Bannon v. Pfiffner*, 333 N.W.2d 464, 470 (Iowa 1983). Here, Mills unequivocally stated that despite the fact she was "partially blinded" by the sunlight, and could not see in front of her "a hundred percent," she "continued with [her] same speed," approximately fifty-five miles per hour for ten to fifteen seconds. In *Foster*, we held a sudden emergency defense was properly rejected where the driver had "ten to fifteen seconds" to assess the situation and take prudent action short of running over the plaintiff. *Foster*, 636 N.W.2d at 107. So also here, although Mills wore sunglasses and pulled down her visor, her act of failing to slow down in the face of foreseeably impaired vision violated the basic premise of the sudden emergency doctrine: that a person acting with knowledge of a dangerous situation exercise reasonable care in response to it. *Rice*, 258 Iowa at 380, 138 N.W.2d at 894. Many other courts faced with this issue have held that when sunlight blinds a driver so that the road cannot be clearly seen, a duty exists to reduce speed and maintain control of the vehicle at all times. *Nagata v. Kahului Dev. Co.*, 49 Haw. 378, 420 P.2d 103, 111 (1966); *Addison v. Traveler's Ins. Co.*, 281 So.2d 805, 810 (La.Ct.App.1973); *Levine v. Scaglione*, 95 N.J.Super. 338, 231 A.2d 229, 231 (1967); *see generally* Wade R. Habeeb, *Liability or Recovery in Automobile Negligence Action as Affected by Driver's Being Blinded by Lights Other Than Those of a Motor Vehicle*, 64 A.L.R.3d 760, 764 (1976).

In short, there is nothing more certain than the sun setting in the west. And a driver heading west near sunset can expect to be faced with the sun's rays. A driver, such as Mills, whose conduct fails to account for that foreseeable hazard, essentially "create[s] the emergency; the emergency does not create the conduct to be excused." *Weiss*, 501 N.W.2d at 482. Under the record made here, the court did not err when it refused to give a sudden emergency instruction.

### C. Evidentiary issues.

Two of Vasconez' treating physicians, Dr. Verduyn and Dr. Pedoto, testified that he sustained a fifteen percent permanent disability as a result of the collision. Mills objected to a portion of Dr. Verduyn's deposition testimony on hearsay grounds and also challenged personal testimony by Vasconez concerning his expressed belief that his disability prevents him from obtaining an advanced degree. Mills challenges these evidentiary rulings on appeal. Although we generally review evidentiary rulings for abuse of discretion, decisions implicating hearsay are reviewed for correction of errors at law. *City of Dubuque v. Fancher*, 590 N.W.2d 493, 495 (Iowa 1999).

#### 1. Dr. Verduyn's testimony.

Mills' challenge to Dr. Verduyn's deposition testimony centers on the fact that his conclusions regarding permanency

were based, in part, on a telephone conversation he had with Vasconez one day prior to his deposition. The doctor had initiated the conversation "to see how [Vasconez] was doing." Because Vasconez had moved from Iowa to Ohio, he and the doctor had not been in contact for nearly fourteen months. During the conversation, Vasconez reported that he was still suffering headaches. In his opinion on permanency, Verduyn commented on their conversation and attached significance to the fact that "three years after the incident" Vasconez was still having headaches, a sign that the symptoms would "stay probably pretty level for awhile."

Mills argued in the trial court, and urges on appeal, that because Verduyn was not Vasconez' "treating physician" at the time of their conversation, Vasconez' statements to him did not qualify under the "medical diagnosis and treatment" exception to the hearsay rule. *See* Iowa R. Evid. 5.803(4). Accordingly, Mills argues, they were unreliable and should not have been admitted. Her argument rests on the distinction articulated in *Devore v. Schaffer*, 245 Iowa 1017, 1021, 65 N.W.2d 553, 555 (1954), between "treating" physicians and other experts. In *Devore* we said:

> The distinction ... between a medical expert witness who is called to treat and actually treats the patient and one called merely to testify seems well established.... [T]he rule permitting a doctor to testify as to the history of the case is an exception to the hearsay rule based on 'a probability that the patient will not falsify in statements made to his physician at a time when he is expecting and hoping to receive from him medical aid and benefit. But no such presumption

can be indulged, and such testimony is not admissible, according to the great weight of authority, when the patient, having become a litigant, causes himself to be examined by a physician for the purpose of the latter giving evidence in a case about to be tried.'

*Devore*, 245 Iowa at 1021, 65 N.W.2d at 555 (citations omitted).

We begin our analysis of this issue by observing that Verduyn's testimony is arguably distinguishable from the expert testimony at issue in *Devore* because Verduyn had in fact been Vasconez' treating physician at one time. He plainly had firsthand knowledge of Vasconez' history, treatment and prognosis for recovery. *Cf. id.* at 1021, 65 N.W.2d at 555 (reversal ordered where jury unable to determine whether non-treating physician's opinions were based on personal examination or litigant's "self-serving declarations"). Nevertheless Mills correctly asserts that Vasconez' disputed statements do not meet the first prong of the two-part test for admissibility of hearsay under rule 5.803(4) adopted by this court in *State v. Tracy*, 482 N.W.2d 675, 681 (Iowa 1992):

> [F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Accord State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). Plainly Vasconez' predeposition conversation with Verduyn had nothing to do with promoting his treatment. For that reason, it was error for the court to overrule Mills' objection premised on this ground.[1]

---

1. It seems evident to us that the same conclusions could have been drawn by the doctor and admitted in evidence based, not on Vasconez' hearsay statements, but on the physician's expertise applied to hypothetical facts supported under this record. *See Devore*, 245 Iowa at 1027, 65 N.W.2d at 558 (Mulroney, J., dissenting).

Although erroneously admitted hearsay is presumed prejudicial, reversal is not warranted if the admitted hearsay is merely cumulative of other evidence in the record. *Hildreth*, 582 N.W.2d at 170. The testimony of Vasconez' then-treating physician, Dr. Pedoto, essentially duplicated the diagnosis and opinion offered by Verduyn. Pedoto's opinion rested, in part, on Vasconez' ongoing complaints of headaches, testimony consistent with Vasconez' reported statements to Verduyn. Vasconez furnished the same testimony at trial. Because evidence identical to the disputed testimony came in without objection, no ground for reversal appears.

#### 2. *Future economic loss.*

By pre-trial motion in limine, and by evidentiary objection at trial, Mills sought to limit Vasconez' testimony concerning future economic loss stemming from his alleged inability to obtain a masters or doctorate in education. The question is whether Vasconez' personal projection of future loss of earning capacity was speculative and without foundation. The district court ruled that the evidence tendered on the point was relevant and material to Vasconez' claims and that Mills' arguments essentially went to the weight of the evidence, not its admissibility. We agree.

The record revealed that Vasconez' parents, who were both teachers, had obtained such advanced degrees. Vasconez testified that, before the accident, he had expected to follow in their footsteps, having personally enjoyed considerable success and satisfaction in both his academic training and performance as a teacher. Evidence corroborating those assertions was admitted without objection. He also testified to his personal knowledge that educators with advanced degrees in the school system in which he worked earn upwards of $100,000 per year, nearly twice his salary at the time of trial. Vasconez explained that the cognitive impairment and fatigue associated with his brain injury had discouraged him from pursuing an advanced degree. He testified that most of his colleagues had obtained their masters degrees by attending courses at night and on weekends, a task that now seemed beyond his reach. Vasconez' personal assessment of his limitations, and the likelihood that they would be permanent, was corroborated by expert testimony in the record.

Although Mills complains that it is speculative whether Vasconez would have ever secured an advanced degree, let alone whether obtaining one would have increased his salary, "it is the loss of earning *capacity* that is compensable, not the loss of earnings." *Sallis v. Lamansky*, 420 N.W.2d 795, 798 (Iowa 1988). A jury may infer from an impairment of physical capacity a corresponding lessening in future earning ability. *Holmquist v. Volkswagen of Am., Inc.*, 261 N.W.2d 516, 525 (Iowa 1977). The record contains abundant evidence concerning the impairment of Vasconez' physical capacity. Moreover, it is not necessary to produce the expert testimony of an economist in order to generate a jury issue on the question of projected economic loss. *See Carradus v. Lange*, 203 N.W.2d 565, 569 (Iowa 1973) (plaintiff's personal testimony regarding educational and work limitations "adequately generated" jury issue on right to damages for impairment of earning capacity).

The jury was entitled to consider Vasconez' personal familiarity with the salaries in question and give his opinion such weight as it deserved. *Sallis*, 420 N.W.2d

at 798. Clearly the evidence was relevant to the claim being made, that is, whether Vasconez' future economic loss was "more or less probable than it would be without the evidence." Iowa R. of Evid. 5.401. In short, we are convinced the court did not abuse its broad discretion in admitting this evidence. No ground for reversal appears.

**AFFIRMED.**