# IN THE COURT OF APPEALS OF IOWA

No. 16-2152
Filed August 2, 2017

**IN THE INTEREST OF Q.G. and W.G.,**
**Minor Children,**

**A.P., Mother**
    Petitioner-Appellee,

**B.G., Father,**
    Respondent-Appellant.
_____


Appeal from the Iowa District Court for Hancock County, Karen Kaufman

Salic, District Associate Judge.


A father appeals from the juvenile court's order terminating his parental

rights in a private termination action. **AFFIRMED.**


Grant C. Gangestad of Gourley, Rehkemper, & Lindholm, P.L.C., West

Des Moines, for appellant.

Dani L. Eisentrager of Eisentrager Law, Eagle Grove, for appellee.

Lynn Collins Seaba of Malloy Law Firm L.L.P., Goldfield, guardian ad litem

for the minor child.


Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A father appeals from the juvenile court's order terminating his parental rights under Iowa Code chapter 600A (2016). He does not contest the statutory grounds for termination were proven by clear and convincing evidence but instead argues (1) termination of his rights was not in the children's best interests and (2) the juvenile court abused its discretion in admitting certain evidence. Upon our de novo review, we affirm.

## I. Background Facts and Proceedings

The parties were married in 2009. They have two children together: Q.G., born in January 2011, and W.G, born in December 2013. Immediately following Q.G.'s birth, both parents stayed home and cared for their child. After a few months, the mother returned to work, but the father stayed home and continued to provide care for the child. Eventually, the father returned to seasonal work for a few months in October 2011.

In November 2011, when Q.G. was only ten months old, the father started using methamphetamine. He later testified he began to distance himself from Q.G. and spend as little time at home and around the mother as possible. The father continued to regularly use drugs—including methamphetamine, prescription pills, and marijuana—over the next few years and even after W.G. was born. The father testified he received the drugs from his friend without charge and also admitted he sold drugs for the friend.

The father worked seasonally in 2012 and 2013 and only worked for a very brief period in 2014. Despite the father's limited employment during this time, the children attended daycare so the father could use drugs during the day.

The father also admitted he wanted the children to attend daycare so that the mother would be required to pick the children up after work and return home rather than stay at work. The mother testified the father did not perform any childcare duties after 2011 because he was not around the family in the evenings. Instead, she was responsible for preparing meals for the family, doing the laundry, and bathing the children and putting them to bed when she got home from work.

In late December 2014, the father was arrested for incidents occurring on two separate occasions that month, including one incident in which both children witnessed the father attempting to strangle the mother and another incident that involved the father breaking a light bulb, pushing the mother to the ground while she was holding one-year-old W.G., and then proceeding to choke her. The mother reported these events to the local sheriff's office, which documented her injuries. The mother also contacted the local police, who found methamphetamine and weapons in the parties' home when they searched it. The father pled guilty to two counts of domestic abuse assault (strangulation), one count of child endangerment, and one count of possession of a controlled substance (methamphetamine) as a result of these incidents. The father also pled guilty to the federal criminal charge of unlawful user of a controlled substance in possession of a firearm stemming from the same incidents. The state district court sentenced the father to a total of seven years in prison, and

the federal district court sentenced him to forty-two months in federal prison, to be served concurrent with the state sentences.[1]

In January 2015, the mother filed a petition for dissolution of their marriage. The court entered a decree dissolving the parties' marriage in May 2016, awarding the mother sole legal custody and physical care of the parties' children pursuant to the parties' stipulation.[2] At that time, the father was not allowed to have contact with the children due to his incarceration for crimes committed against them. Thus, the decree further provided any visitation or contact between the father and his children must be supervised and scheduled at the mother's discretion, and was contingent upon the father's involvement in and completion of any programs required by the Iowa Department of Corrections (DOC). Additionally, the decree ordered the father to pay $50 per month to the mother in child support.

In August 2016, the mother filed a petition to terminate the father's parental rights pursuant to Iowa Code chapter 600A. Following a hearing on the mother's petition in November, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 600A.8(3) and (9). The court concluded termination was in the children's best interests because the father had not expressed an interest in his children even though he was living in the same

---

[1] In his brief on appeal, the father states he was paroled in February 2017. Following his release on parole from state custody, the father was transferred to federal custody to serve the remainder of his federal sentence, including a period of time in a halfway house. The father's tentative discharge date is March 2018, although the father hopes to be released sooner. At the termination hearing, the father testified he had secured employment following his release from federal custody and planned to live with his parents until he could find his own housing.

[2] The parties stipulated to this arrangement and the court approved the stipulation in its decree. However, the father did not sign the stipulation until July due to his incarceration and the stipulation was not filed with the court until August.

house as them, "ha[d] not demonstrated a genuine effort to maintain communication with the children," and "ha[d] not demonstrated the establishment and maintenance of a place of important in the children's lives." The court noted the father did not share close bonds with the children because he had been absent all of W.G.'s life and for most of Q.G.'s life due to his drug use, incarceration, or personal decision to stay away from his children. The court acknowledged the father had made progress in prison and taken positive steps but found these actions were "tarnished significantly by his persistent and unwavering anger at [the mother], the continued blame of her for all of his problems and his complete inability to let any of her past mistakes be forgotten, forgiven or unpunished." The court found the father had not taken responsibility for his actions and continued to "pose[] a significant risk to the children and will be unable to 'co-parent' as he asserts."

The court also recognized the father's network of support from friends and family, and in particular his parents, whom the court noted had been a good support system for the family prior to the father's arrest and clearly loved the children. However, the court determined the witnesses who testified on the father's behalf had a limited view of his drug abuse, physical violence, and care of his children that was based on the father's inaccurate and incomplete reporting. The court expressed its desire for the mother to repair her relationship with the grandparents and allow them to be a part of the children's lives but ultimately found the relationship between the children and their paternal extended family did not preclude termination of the father's parental rights.

The father appeals.

## II. Scope and Standard of Review

"We review private termination proceedings de novo." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give weight to the district court's factual findings, especially those concerning witness credibility, but we are not bound by them. Iowa R. App P. 6.904(3)(g). Our primary consideration is the best interests of the child. *See* Iowa Code § 600A.1; *see also In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

We review evidentiary rulings for an abuse of discretion. *See Gamerdinger v. Schaefer*, 603 N.W.2d 590, 594 (Iowa 1999).

## III. Analysis

### A. Best Interests

In a private termination action under chapter 600A, a court may terminate a parent's parental rights when the petitioning party has shown by clear and convincing evidence that the statutory grounds for termination exist. *See* Iowa Code §§ 600A.3, .5, .8; *In re R.K.B.*, 572 N.W.2d at 601. In this case, the father does not dispute the statutory grounds for termination have been proven by clear and convincing evidence pursuant to Iowa Code section 600A.8(9), which states the court may terminate when "[t]he parent has been imprisoned for a crime against the child [or] the child's sibling." Thus, we need not address this issue and our inquiry turns to whether termination is in the children's best interests. *See In re J.L.W.*, 523 N.W.2d 622, 625 (Iowa Ct. App. 1994).

The father contends termination of his parental rights is not in the children's best interests. He complains there has not been a substantial change in circumstances justifying a modification of his parental rights since the parties'

marriage was dissolved and the juvenile court should not have relied on facts and circumstances that were within the district court's contemplation at the time it entered the decree.[3]   He further claims he has financially contributed to the support of his children, demonstrated a continued interest in them, and demonstrated an effort to maintain communication with them.   The father contends he shares a bond with Q.G. and, although he lacks a relationship with W.G. due to the child's young age when the father was arrested, he can repair his bonds with his children.   The father also asserts termination is not in the children's best interests because he loves his children and termination would detrimentally impact the children's bonds with his parents and extended family.

The children's best interests "require[] that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1.   In determining best interests, this court shall consider, among other things, "the fulfillment of financial obligations, demonstration of

---

[3] The father questions the juvenile court's "authority to effectively overturn an order of a district court establishing the custody rights and responsibilities of [the] parties" and asserts the mother's petition for termination of parental rights "is essentially an *application for modification* of the original decree."   Thus, he claims, the juvenile court should only have considered what occurred in this case after the district court entered the dissolution decree in May 2016.   To that end, he contends the mother has not shown he has done anything since entry of the decree that makes him unfit to parent his children.   He complains he was prevented from having contact with his children—first by the DOC and then by the mother—which did not allow him to prove termination is not in the children's best interests.   He also points to the progress he has made in prison through completing a parenting class, attending Narcotics Anonymous meetings, and engaging in required treatment.
The father's claim is wholly without support.   A private action for termination of parental rights is not the same as a modification of child custody and there is nothing in the Iowa Code or our case law to suggest that a parent petitioning under chapter 600A must show a substantial change in circumstances from a prior court order entered in a chapter 598 action.   The juvenile court correctly relied on evidence from before the district court entered the dissolution decree.   Moreover, even if we were to confine our review to the facts and circumstances occurring since the decree was entered, we would reach the same result, as discussed below.

continued interest in the child[ren], demonstration of a genuine effort to maintain communication with the child[ren], and demonstration of the establishment and maintenance of a place of importance in the child[ren]'s li[ves]." *Id.* Additionally, our supreme court has borrowed from section 232.116(2) and (3) to flesh out the contours of the best-interests framework in private terminations. *See In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010) (considering the child's "physical, mental, and emotional condition and needs," Iowa Code § 232.116(2), and the "closeness of the parent-child bond," Iowa Code § 232.116(3)(c)).

It is undisputed the father cared for Q.G. for almost the first ten months of the child's life. After that time, however, the father turned to drugs and was not available to parent his children or provide for them financially. The father worked only seasonally from late 2011 until late 2013 and barely at all in the year leading up to his arrest. In contrast, it was the mother who provided for the family by working, paying for childcare, and also providing care for the children and maintaining the home when her workday was over while the father admittedly spent as little time at home as possible. Following his arrest, the father was incarcerated and unable to contribute to the family's needs financially. The dissolution decree ordered the father to pay the minimal amount of $50 per month in child support to the mother beginning in June 2016. The father did not begin paying this obligation until one month prior to the termination hearing; however, the record shows the father's support obligations were fully paid at the time of the hearing.

At the termination hearing, the father admitted that prior to his arrest he was not around the children much, despite living with them, because of his drug

use. He acknowledged his drug use had changed his behavior and caused his relationships with his children to suffer. The father has a history of domestic violence toward the mother and their children, including an incident during which the father broke a light bulb over the mother and their infant, showering them with broken glass, and then pushing her to the ground while the infant was still in her arms before attempting to strangle her. The father has not taken responsibility for these actions and continues to blame the mother even though he pled guilty to the charges stemming from this incident.

The father has not seen his children since his arrest in December 2014, with the exception of one visit in May 2015 arranged by the local sheriff.[4] The father's last telephone contact with his children was in January 2016, and even then the contact was not meaningful because the children were both so young. In February 2016, all contact between the father and his children ceased due to a DOC policy that did not permit the father to have contact with the victims of his crimes until he engaged in the recommended treatment program. The father completed the DOC's requirements to resume contact with his children in October 2016. Five days prior to the termination hearing, the DOC lifted the restriction on the father's contact with the children, and the father immediately requested contact. The mother denied the father's request due to the pending termination hearing and her belief contact was not in the children's best interests. The father continues to blame his lack of contact and diminished bonds with his

---

[4] At the termination hearing, the father agreed he did not want the children to visit him while he was incarcerated.

children on everyone but himself when he alone is responsible for his predicament.

We recognize the father's attempts to improve his situation while incarcerated by participating in a voluntary parenting class, consistently attending Narcotics Anonymous meetings, and completing the DOC's required treatment program. Indeed, the record shows he has been a model inmate. But the father's actions after he was caught and incarcerated and therefore unable to parent his children do not make up for the years he lived in the same house as them and chose not to be a parent to them. We consider a "child's long-range, as well as immediate, interests" in making our decision. *In re R.K.B.*, 572 N.W.2d at 601 (citation omitted). "Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing." *Id.* (citation omitted).

Q.G. was almost four when the father was arrested and W.G. was only one; they are now ages six and three, respectively. The father has not been available to parent them due to his drug use and incarceration for the majority of their lives. W.G. has no memory of the father and whatever bond still remained between the father and Q.G. at the time of his arrest has since been destroyed as a consequence of the father's actions. The mother remarried shortly before the termination hearing. The children have known and lived with their step-father since March 2015 and refer to him as their father. The step-father is actively involved in the children's lives and testified he intends to adopt the children upon termination of the father's parental rights. At the termination hearing, the father

acknowledged both the mother and the step-father were good parents. Additionally, the guardian ad litem for the children recommended termination of the father's parental rights was in the children's best interests.

We have also considered the children's connection to their extended paternal family but conclude these relationships do not preclude termination. The mother testified that, prior to the father's arrest, she had a good relationship with the father's parents and they had often watched the children when she was not able. However, she testified she had not maintained a relationship with the father's parents because she felt "[t]hey are unhealthy for the [children.] [The grandfather] in particular says things to them that upset them." While we share the juvenile court's hope that the mother will someday resume fostering a relationship between the children and their extended paternal family, we cannot ignore the poor decisions the paternal grandparents have made in trying to cope with this difficult situation and the grandparents refusal to recognize their son's role in all of this. The grandparents must be prepared to put the children's safety first.

Upon our de novo review, we find the mother has established by clear and convincing evidence that termination is in the children's best interests. Accordingly, we affirm the juvenile court's order terminating the father's parental rights.

### B. Evidentiary Issues

The father also claims the juvenile court abused its discretion in admitting certain evidence. Specifically, he argues the court should not have admitted exhibits consisting of letters from the children's social worker and pediatrician

and an incident report from the local sheriff's office because they contained hearsay and were prejudicial. He further contends the court should not have admitted an exhibit showing the father had previously consented to the termination of his parental rights to another child in 2008 because the evidence was irrelevant and unfairly prejudicial.

In equity cases such as this, evidence that is typically excluded under the rules of evidence in a trial at law is admissible and the nature of the evidence is considered for its probative value rather than its admissibility. *In re H.R.K.*, 433 N.W.2d 46, 48–49 (Iowa Ct. App. 1988). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Erroneous evidentiary rulings will not result in reversal unless they are prejudicial. Iowa R. Evid. 5.103(a); *In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007).

We find the juvenile court properly admitted the letters from the children's social worker and pediatrician and the incident report. *See* Iowa Code §§ 600A.7(1) ("The hearing on termination of parental rights shall be conducted in accordance with the provisions of sections 232.91 to 232.96 . . . ."), (2) ("Relevant information, including that contained in reports, studies or examinations and testified to by interested persons, may be admitted into evidence at the hearing and relied upon to the extent of its probative value."); *see also id.* § 232.96(6) (allowing the admission of "[a] report, study, record, or other writing or an audiotape . . . recording made by the department of human services, a juvenile court officer, a peace officer or a hospital . . . notwithstanding

any objection to hearsay statements contained [with]in," if it is relevant and not unfairly prejudicial); *In re E.J.R.*, 400 N.W.2d 531, 532–33 (Iowa 1987) (holding hearsay evidence is admissible in a termination-of-parental-rights hearing). Furthermore, the mother testified as to the contents of the letters from the children's providers and the events underlying the incident report at the termination hearing without objection. And the father testified regarding his consent to termination of his parental rights with respect to an older child also without objection. Thus, we find the challenged evidence was merely cumulative and not prejudicial to the father. *See Vasconez v. Mills*, 651 N.W.2d 48, 57 (Iowa 2002). Accordingly, we conclude the juvenile court did not abuse its discretion in admitting the challenged evidence.

## IV. Conclusion

Upon our de novo review, we find the mother has established by clear and convincing evidence that termination of the father's parental rights is in the children's best interests. We further find the juvenile court did not abuse its discretion in admitting the challenged evidence. We affirm.

**AFFIRMED.**